375 A.2d 1388.

STATE *vs.* BRUCE LEONARDO.

JULY 29, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

8

BEVILACQUA, C.J.  This is an appeal by the defendant from conviction of murder in the second degree and conspiracy to murder. After trial before a jury he was found guilty of murder in the second degree and conspiracy to murder. After the verdicts and within the time required by the rules of criminal procedure, the defendant filed a motion for a new trial and a motion for arrest of judgment, the latter on the grounds that the two verdicts were inconsistent.

The trial justice denied both motions and sentenced defendant to 50 years for murder in the second degree and 10 years to run concurrently with the 50-year sentence for conspiracy to murder.

On May 26, 1973, the body of Alfred Giarusso, Jr., was found stuffed in a barrel at the Adult Correctional Institutions (ACI). Despite the many stab wounds, the cause of death, according to the medical examiner, was strangulation.

The defendant made a formal confession to Detective Martin and Corporal Virgilio of the Rhode Island State Police. In essence, it stated that defendant agreed to and did in fact lure the victim into Ronald Gauthier's cell ostensibly to tatoo him but actually to allow Steven Rollins to strangle him. He then, together with Edward Raso, placed the body in the barrel where it was found.

After severance of defendant's trial from that of his co-defendants, a hearing was held on March 5, 1974, to determine the admissibility of defendant's confession to the state police and of his grand jury testimony. At the hearing Detectives Martin and Virgilio testified that on June 27, 1973, they spoke to defendant and he refused to make any statements regarding the murder.

State Police Captain Lionel Benjamin testified that he saw defendant on June 28, 1973, at approximately 7 p.m. at the ACI. He further stated that defendant was advised of his rights and of the fact that the police had information of his involvement in the murder. The defendant refused to make any statements at that time. Later that same evening Captain Benjamin testified that defendant returned to the warden's office and was once again advised of his rights, and was also told that if he cooperated with the police they would place him in protective custody. The defendant then made statements as to his participation in the commission of the crime. Detectives Martin and Virgilio testified that on June 29, 1973, defendant made a formal confession in their presence.

Assistant Attorney General William A. Dimitri, Jr. testified that he met with defendant on June 29, 1973. He stated that he advised and explained to defendant his constitutional rights and then discussed his testimony which was to be presented to the grand jury. This testimony was substantially similar to the statements contained in the written confession. He further testified that he did not coerce or induce defendant to make any statements and that defend-

ant did not indicate that he had been previously coerced or induced to make any confession.

A co-defendant, Donald R. Bennett, testified that on May 26, 1973, he was in a position to observe the occupants in Ronald Gauthier's cell at the time of the murder. This testimony coincided substantially with the statements in defendant's confession. The defendant, in turn, substantially corroborated the state police accounts of his first and second meetings with them.

However, defendant claimed that between his two June 28, 1973 meetings with the police he was taken to the Behavioral Conditioning Unit (BCU) at the ACI and beaten by various correctional officers. After this beating, he returned to the warden's office, where Captain Benjamin and Corporal Vespia allegedly offered him a 20-year package deal for all pending charges if he would cooperate. The defendant also stated that a person whom he believed to be the Attorney General was called by the police and after this phone call he made the statements to the police. The defendant did not accuse the police of employing threats or physical abuse.

The defendant recanted his previous statements to the police and the grand jury. He testified that they were complete fabrications which were made because of the beatings and his fear of the prison guards, and also because of the offer made by the police.

In order to rebut the defendant's testimony, the prosecution presented two corrections officers implicated in the beatings by defendant. They denied having accompanied defendant to the BCU and denied having beaten him. Cross-examination by defense counsel established the existence of BCU records which log names and dates for every entry into the area. Upon completion of the hearing on March 11, 1974, the trial justice denied the motion to suppress and ordered the trial on the indictments to proceed immediately. On March 25, defense counsel requested a

recess in order to subpoena the BCU logs. The trial justice denied the request. On March 27, the jury returned their verdict.

The issues before us are (1) whether the trial justice's denial of a continuance during the course of the trial to permit defendant to subpoena certain records was an abuse of discretion amounting to a denial of due process, and (2) whether the trial justice erred in refusing to grant defendant's motion for arrest of judgment on the grounds of inconsistent verdicts.

I

The defendant contends that the failure to grant his request for a recess to permit him to obtain records allegedly vital to his defense deprived him of his constitutional right to a fair and impartial trial.

There is no question that due process requires that every defendant have a full opportunity to establish the best and fullest defense available to him. *State* v. *Patriarca*, 112 R.I. 14, 308 A.2d 300 (1973); *accord, State* v. *Carillo*, 113 R.I. 32, 317 A.2d 449 (1974); *State* v. *Rossi*, 71 R.I. 284, 43 A.2d 323 (1945). However, a motion for a continuance in a criminal case is addressed to the sound discretion of the trial justice, and his decision thereon will not be disturbed on appeal absent an abuse of discretion. *State* v. *Levitt*, 118 R.I. 32, 371 A.2d 596 (1977).

There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reason presented to the trial justice at the time the request is denied. *Ungar* v. *Sarafite*, 376 U.S. 575, 84 S. Ct. 841, 11 L. Ed.2d 921 (1964); *State* v. *Dias*, 118 R.I. 499, 374 A.2d 1028.

In the instant case, on March 26, 1974, the last day of the jury trial, the defense counsel requested a recess to permit him to subpoena the logs of the BCU. The defendant alleged

that these records would contradict the correctional officers' testimony that not only did they not beat defendant, but that they never even accompanied him to the BCU on the date in question. The record establishes that defense counsel was aware of the existence and location of these logs at least as early as the pretrial suppression hearing.

Thus, we agree with the trial justice's conclusion that the existence of this evidence came as no surprise to defendant. The defendant had ample opportunity to prepare his defense and subpoena the records. Particularly when an accused has failed to use due diligence to obtain evidence for the trial as set or when the absence of the witness or evidence is fairly attributable to the accused's fault, the right to procure evidence does not require a continuance upon request as a matter of course. *State* v. *Carillo; State* v. *Patriarca,* both *supra.* The defendant has shown us no special circumstances which render the trial justice's denial of the recess an abuse of discretion despite defendant's failure to use due diligence to procure the evidence for the trial as set. We therefore hold that the denial of the motion for a continuance did not amount to an abuse of discretion.

## II

The defendant contends that the verdicts of guilty of murder in the second degree and of conspiracy to murder are legally inconsistent. He points to the trial justice's instructions to the jury that if the conscious design or intent to kill existed for more than a moment before the killing, the crime was murder in the first degree, but if the design or intent existed for only a moment before the killing the crime was murder in the second degree. The defendant argues that since the jury acquitted defendant of first degree murder, it found that no premeditation or conscious design existed for more than a moment before the killing, and thus there could not have been an agreement between the codefendants such that defendant's acts of luring the victim into the cell and being present at the time of the crime could

be punishable under a conspiracy theory. We do not agree.

As we noted in *State* v. *Eckhart*, 117 R.I. 431, 438, 367 A.2d 1073, 1077 (1977), the landmark case in the area of inconsistent verdicts is *Dunn* v. *United States*, 284 U.S. 390, 393, 52 S. Ct. 189, 190, 76 L. Ed. 356, 358-59 (1932), where Mr. Chief Justice Holmes stated: " 'Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.' " The *Dunn* rule still represents the weight of authority. Courts will continue to uphold jury verdicts that may be logically inconsistent as long as the verdicts are legally consistent. *State* v. *Eckhart*, *supra* at 439, 367 A.2d at 1077. The jury must be afforded broad powers to arrive at inconsistent verdicts of acquittal and conviction through its traditional power to compromise whether it is motivated by leniency or other considerations. *Id.*

The question for us is whether the convictions are consistent with the evidence. *Jackson* v. *United States*, 313 F.2d 572 (D.C. Cir. 1962). This is not a case where verdicts were rendered upon charges in which the elements of the offense alleged are identical and proof of one offense was also proof of the other. *See State* v. *Eckhart, supra.* Here these are separate and distinct crimes that can stand alone. Where an accused is convicted of two crimes stemming from the same act, transaction, or event, the test is whether he could be guilty of both. *State* v. *Barker*, 94 Ariz. 383, 385 P.2d 516 (1963).

Applying that test in the instant case, we find that the verdicts of guilty of murder in the second degree and conspiracy to murder are not necessarily incompatible for the evidence to which we have previously alluded is sufficient to support convictions on both charges. We therefore hold that the verdicts are not so inconsistent as to be reversible.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

14

*Julius C. Michaelson,* Attorney General, *John R. McDermott,* Special Assistant Attorney General, for plaintiff.

*Amato A. DeLuca, Esq.,* for defendant.