**STATE**

v.

**Gordon D. TEMPEST.**

No. 94–129–C.A.

Supreme Court of Rhode Island.

July 7, 1995.

Aaron L. Weisman, Asst. Atty. Gen., Jeffrey B. Pine, Atty. Gen., Providence, for plaintiff.

William A. Dimitri, Jr., Dimitri & Dimitri, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter came before the Supreme Court on the appeal of Gordon Tempest (defendant), from a Superior Court jury conviction of seven counts of perjury. For the following reasons we affirm the defendant's conviction.

The facts pertinent to this appeal are as follows. On February 19, 1982, the brutally murdered body of Doreen Picard was found at 409 Providence Street in Woonsocket, Rhode Island. On June 4, 1991, following almost a decade of police investigation, Raymond (Beaver) Tempest, Jr. (Raymond), was indicted for the murder of Doreen Picard in violation of G.L.1956 (1981 Reenactment) §§ 11–23–1 and 11–23–2. Raymond was tried before a jury, and on April 22, 1992, the jury returned a verdict of guilty of murder in the second degree. Raymond was subsequently sentenced to eighty-five years' imprisonment, and his appeal to this court was denied and dismissed. *State v. Tempest,* 651 A.2d 1198 (R.I.1995).

It is the actions of then-Detective Sergeant Gordon Tempest of the Woonsocket police department (defendant), Raymond's brother, during the investigation and subsequent trial of Raymond that are the basis of the controversy now before the court. Relying on testimony that defendant gave to the grand jury concerning the murder of Doreen Picard and the testimony that defendant gave at the trial of his brother Raymond, a statewide grand jury indicted defendant in September 1992 on seven counts of perjury.

On July 6, 1993, defendant was convicted on all counts, five counts for false testimony given at Raymond's trial and two counts for testifying falsely before the grand jury. On September 10, 1993, defendant was sentenced to twenty years at the Adult Correctional Institution, with seven years to serve, thirteen years suspended, and thirteen years' probation. The defendant subsequently appealed his conviction to this court.

The first issue presented by defendant is whether the trial justice erred in denying his motion to dismiss the indictment on the basis of incidents of misconduct by the prosecutor during the grand jury proceedings. The defendant asserts that "the prosecutor's management of the grand jury resulted in the grand jury members being regularly inundated with the injection of highly irrelevant and prejudicial material resulting in a significant infringement of the grand jury's ability to exercise independent judgment." To support his position, defendant cites numerous instances of misconduct including allegations that the prosecutor informed the grand jury that there had been more than twenty previous grand juries related to this matter, that defendant was under suspension from the Woonsocket police department, and that defendant had been previously indicted for perjury in relation to this case.

"[T]he dismissal of an indictment on the grounds of prosecutorial misconduct is an extraordinary sanction reserved for very limited and extreme circumstances." *State v. Mainelli*, 543 A.2d 1311, 1313 (R.I.1988); *State v. Wilshire*, 509 A.2d 444, 448 (R.I. 1986); *State v. Romano*, 456 A.2d 746, 750 (R.I.1983). "[A]n indictment returned by a legally constituted grand jury calls for a trial on the merits." *Mainelli*, 543 A.2d at 1313 (citing *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397, 402–03 (1956)).

■ The jurisprudence of both this court and the United States Supreme Court has been consistent that a conviction by a petit jury after a full trial on the merits renders harmless any defect occurring during the grand jury proceedings. *United States v. Mechanik*, 475 U.S. 66, 70, 106 S.Ct. 938, 942, 89 L.Ed.2d 50, 56 (1986); *State v. Woodson*, 551 A.2d 1187, 1191 (R.I.1988); *Mainelli*, 543 A.2d at 1313.

"[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charg-ing decision was harmless beyond a reasonable doubt." *Mechanik*, 475 U.S. at 70, 106 S.Ct. at 942, 89 L.Ed.2d at 56.

We agree with the state that the alleged prosecutorial misconduct before the grand jury was harmless beyond a reasonable doubt. Therefore, the trial justice properly denied defendant's demand for dismissal of the indictment.

■ The defendant next asserts that the trial justice erred in precluding his counsel from questioning one Sergeant Pennington during direct examination concerning a statement given by Daniel Shaw (Shaw) regarding the whereabouts of defendant on February 20, 1982. The defendant's offer of proof demonstrated an attempt to contradict the testimony of Sherri Richards (Richards) who testified that defendant spoke with her about the whereabouts of his brother on the the day of the murder. Through an offer of proof defendant showed that he was prepared to elicit from Sergeant Pennington that Shaw, in a statement given to the Woonsocket police department, told police that at approximately 10 or 10:45 a.m. on February 20, 1982, defendant was with his father and Shaw at defendant's father's home and not with Richards.

The trial justice sustained the state's objection to the defense counsel's line of questioning of Sergeant Pennington because the answer would have been hearsay. The defendant contends that the trial justice should have permitted Sergeant Pennington to answer defense counsel's question since it was admissible as an exception to the hearsay rule, Rule 803 of the Rhode Island Rules of Evidence. Rule 803(24) provides:

"A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a

statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his or her intention to offer the statement and the particulars of it, including the name and address of the declarant."

We are not persuaded by defendant's argument that Shaw's statement should have been admitted under Rule 803(24). It is clear that Shaw's statement is not "more probative on the point for which offered than any other evidence which the proponent can procure through reasonable efforts." *Id.* We agree with the state that if defendant wanted to establish that Shaw was at defendant's father's home with defendant at approximately 10 or 10:45 a.m. the morning after the murder, he should have called Shaw to testify to that fact during trial. Therefore, the trial justice was correct in sustaining the state's hearsay objection.

■■■ The defendant next asserts that the trial justice erred in denying his motion for judgment of acquittal of counts 1 through 5 pursuant to Rule 29(a) of the Superior Court Rules of Criminal Procedure. In assessing a motion for judgment of acquittal, "a trial justice must determine whether the evidence offered by the state is capable of generating proof of guilt beyond a reasonable doubt." *State v. Caruolo*, 524 A.2d 575, 580–81 (R.I. 1987). When making that determination, this court, like the trial justice, "must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, and must draw therefrom all reasonable inferences consistent with guilt." *Id.* at 581. For the following reasons we hold that the trial justice was correct in denying defendant's motions for judgment of acquittal.

■■■ Count 1 of the indictment charged defendant with perjury before the statewide grand jury on April 12, 1991, in that defendant falsely testified when he denied that he had talked to Matthew Mandeville (Mandeville) in the Woonsocket police station about the whereabouts of his brother Raymond on the afternoon of February 19, 1982. The

defendant cites *State v. Ouimette*, 415 A.2d 1052, 1054 (R.I.1980), for the proposition that "a defendant's responses to questions, if literally true even though perhaps shrewdly misleading are not perjurious."

The record indicates that during the grand jury proceedings, when defendant was asked whether he had ever spoken with Mandeville, he responded, "I don't even recognize him." The record also indicates that Mandeville testified at defendant's trial and that the following colloquy took place:

> "PROSECUTOR: Now, did there come a time when somebody from the Woonsocket Police Department talked to you about what you just described?
>
> "MANDEVILLE: Yes, about a year and a half, two years later.
>
> "PROSECUTOR: Who was that?
>
> "MANDEVILLE: Gordon Tempest.
>
> "PROSECUTOR: Now that you—Do you see that person in court?
>
> "MANDEVILLE: Yes, I do.
>
> "PROSECUTOR: Where's he seated and just tell us what he's wearing?
>
> "MANDEVILLE: Seated on the side of Mr. Dimitri, wearing a gray suit with a gray tie and a white shirt."

This interchange alone supports the proposition that a rational juror could find defendant guilty beyond a reasonable doubt. Therefore, defendant's motion for judgment of acquittal on count 1 of the indictment was properly denied.

Count 2 of the indictment charged defendant with falsely testifying at Raymond's trial on April 13, 1992, when he denied that in approximately 1984 or 1985 he had interviewed Mandeville and been told by Mandeville that Mandeville had seen his brother Raymond, on February 19, 1982, with Shaw and Robert Monteiro. Count 2 concerns the following colloquy at Raymond's trial.

> "PROSECUTOR: Approximately 1984 and 1985 did you interview a person by the name of Matthew Mandeville?
>
> "DEFENDANT: No, I did not.
>
> "PROSECUTOR: In approximately 1984 or '85, did a person named Matthew Mandeville tell you that he had seen your

**282**

brother that day with Danny Shaw and Robert Monteiro?

"DEFENDANT: No."

The defendant contends that Mandeville testified during cross-examination that the interview with defendant took place "around late '83," and at another point answered "yes" to defense counsel's question "[w]as this October of '83?" Therefore, defendant asserts, no rational juror could have found that defendant committed perjury when he denied interviewing Mandeville in "approximately 1984 or '85."

■ This argument is entirely without merit. The defendant ignores Mandeville's testimony on direct examination that he was interviewed by defendant "about a year and a half, two years" after February 19, 1982, which is indeed approximately 1984. This testimony supports an inference that could support a guilty verdict on count 2. The defendant's motion for judgment of acquittal on count 2 was therefore properly denied.

■ Count 3 charged defendant with falsely testifying at Raymond's trial on April 13, 1992, when he denied that in 1982 he had a conversation with Estelle Accord (Accord) at the St. James Hotel in Woonsocket, Rhode Island, in which he told her that his brother Raymond had killed Doreen Picard. The defendant testified as follows:

"PROSECUTOR: Did you have a conversation with Estelle Accord at the St. James Hotel in 1982 where you told her that your brother had killed Doreen Picard?

"DEFENDANT: I never told Estelle Accord or any other person that my brother did this. My brother didn't do this. I never said that to anyone. And if she said I said that, she's a liar. I never said that. * * * I never had a conversation with any of them in any way, manner, said anything like that, never."

On the day after this testimony, defendant moved to pass the case, alleging that the prosecutor's actions were prejudicial to defendant because he made it appear that he had a written statement of Estelle Accord in his hand when he was questioning defendant. In actuality the prosecutor was only holding a summary of Accord's statements. The trial

justice on the next day instructed the jury that

"[the prosecutor] asked Mr. Tempest (Gordon) if he had told Estelle Accord in 1982 at the St. James Hotel that his brother had killed Doreen Picard. In asking that question, which Mr. Gordon Tempest denied making, [the prosecutor] was holding and apparently looking at a piece of paper which may have caused you to imply that [the prosecutor] was reading from a statement given by Miss or Mrs. Accord. A reading of that piece of paper shows clearly that it was not a statement given by Miss or Mrs. Accord. I trust you will put aside and out of your minds any implications that you derive from [the prosecutor's] questions that are contrary to the facts which I have just explained to you * * * [the prosecutor] did not have in his hand any statement given by Miss or Mrs. Accord."

The defendant argues that the trial justice should have granted his motion for judgment of acquittal on count 3 of the indictment because the prosecutor's question and the defendant's answer were stricken by the trial justice's admonishment to the jury. The record in no way indicates that the trial justice struck defendant's answer from the record. The trial justice's curative instruction informed the jury that the piece of paper the prosecutor was holding was not a statement given by Accord. The defendant's answer was properly before the jury, and defendant's motion for judgment of acquittal on count 3 was properly denied.

■ Count 4 of the indictment charged defendant with falsely testifying at Raymond's trial when he denied (1) that he spoke with Sherri Richards the day after the murder of Doreen Picard and (2) that she had told him at that time that his brother had gone back to 409 Providence Street, Woonsocket, Rhode Island, a second time on the day of the murder. The defendant contends that Richards's insistence that she spoke to defendant on Saturday, February 20, 1982, "after the kids went to school" was totally improbable, if not impossible, and should not have been sanctified as proof beyond a reasonable doubt. The defendant asserts that

since the trial justice took judicial notice that February 20, 1982, was a Saturday, it was an undisputed fact that Saturday was not a school day. The reasoning follows that Richards could not have spoken with defendant "after the kids went to school."

The defendant's argument has no merit. The record indicates that Richards testified that she had a conversation with defendant on February 20, 1982. Richards testified that she generally got together with her friends and had coffee after the kids went to school. She did not say that the kids left for school the day that she spoke with defendant. The trial justice therefore properly allowed this count to go to the jury and defendant's motion for judgment of acquittal on count 4 of the indictment was properly denied.

Count 5 of the indictment charged defendant with falsely testifying before the state-wide grand jury on May 1, 1990, when he testified that he did not discuss the investigation into the death of Doreen Picard with Terrence Gelinas (Gelinas) outside a location known as the Quality Lunch in Woonsocket, Rhode Island. The defendant contends that Gelinas testified that he had a conversation with defendant in the fall of 1983 or spring of 1984 at the Quality Lunch. During defendant's testimony it became apparent that the Quality Lunch did not exist in 1984 because it had burned down in the late seventies. Therefore, defendant argued to the trial justice that because the old Quality Lunch in Woonsocket burned down in the late seven-

ties, and defendant was thinking of that establishment when he answered the prosecutor's question, it was not in fact perjury to answer "no" to that question.

The defendant's argument is not persuasive. The trial justice was correct when he ruled that it was proper for the jury to determine whether the defendant had in mind the "old" Quality Lunch or the "new" Quality Lunch that existed in 1983 when he answered the prosecutor's question. Therefore, the defendant's motion for judgment of acquittal on count 5 of the indictment was properly denied.

We are satisfied after our review of the record that the state presented evidence that, if believed by the jury, could establish guilt beyond a reasonable doubt that this defendant had given perjured testimony as charged. For these reasons the defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the papers of the case are remanded to the Superior Court.

BOURCIER, J., did not participate.