**STATE**

v.

**Angelo RAMIREZ.**

**No. 99–306–C.A.**

Supreme Court of Rhode Island.

Dec. 14, 2001.

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

Kelly Monteiro, Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

On May 17, 1996, four-year-old Mayri–Mar Colon (Mayri–Mar) was shot by the defendant, Angelo Ramirez (the defendant or Ramirez), while she was playing on the sidewalk outside an apartment building with her five-year-old brother, Christopher Colon (Christopher). At the time of the shooting, Ramirez was pursuing William Washington (Washington), a.k.a. "Chill Will," in a high speed car chase through the Manton section of Providence and firing gun shots at Washington's vehicle. Although Washington was the object of the defendant's ire, little Mayri–Mar suffered its consequences and still carries one of the defendant's bullets in her young body.

After a jury trial, Ramirez was found guilty of assault with intent to murder; assault with a dangerous weapon; unlaw-

ful discharge of a firearm from a motor vehicle in a manner creating substantial risk of death or serious physical harm to another; and unlawful carrying of an unlicensed firearm. He was sentenced to an aggregate sentence of fifty years to serve at the Adult Correctional Institutions, twenty of which were suspended with probation. In addition, the trial justice imposed a fine of $5,000.

In his appeal, the defendant asserts that the trial justice erred in denying his motion for a new trial contending that "the verdicts were legally inconsistent and not sufficiently supported by the evidence."

## I

### Facts/Procedural History

At approximately 8:30 p.m. on the day of the shooting, seventeen-year-old Evelin Sanchez's (Sanchez) motor vehicle was parked on Manton Avenue in Providence. While standing at the driver's side and strapping a child car seat onto the rear seat of her car, she suddenly noticed two speeding cars approaching her. The first car was a small, white two-door vehicle; the second car was a large, black four-door sedan. Fearing for her safety, Sanchez jumped into the back seat of her car. As she did, the other cars sped past her and she recognized the driver of the black car as the defendant Ramirez. At the time, she had known Ramirez for about six years. She was unable to observe who was driving the white car. After the cars had passed her, she heard three gunshots fired in rapid succession and, almost simultaneously, she observed flashes of light coming from the driver's side of the black car.

Meanwhile, further down Manton Avenue, at the corner of Sisson Street, eleven-year-old Helen Melendez (Helen) was babysitting her two cousins, Christopher and Mayri–Mar, as they played on the sidewalk in front of an apartment building on Sisson Street. While supervising the children from inside the doorway of the building, she suddenly observed two cars speeding on Manton Avenue approaching the corner of Sisson Street. She observed a black male (later identified as Washington) on the driver's side of a white car. In the other car, which she variously described as "dark" and "dark red," she noticed a young Spanish-looking female in the front passenger seat, but was unable to clearly see the driver of the dark car who, to her, "seemed like a boy."

The first car to reach Sisson Street was the white car, which sped around the corner. The dark car was in close pursuit. As it was turning the same corner, Helen heard rapid gunfire. From inside the doorway, she then looked towards where her cousins had been playing on the sidewalk and noticed that Mayri–Mar had fallen to the ground. She rushed over and picked up the child. Mayri–Mar told her that they had killed her and lifted up her shirt to show Helen where she had been shot.

Meanwhile, after learning that a child had been shot, Sanchez called 911 to report her observations concerning the speeding cars and to identify the driver of the pursuing car as being the defendant Ramirez. She informed the 911 operator that she believed the driver of the other car was Washington, because Washington previously had pushed the defendant's girlfriend down some stairs. In a subsequent statement to the police, she said that she had observed Washington and the defendant fighting two hours before the shooting and that, shortly thereafter, she had observed the defendant with a gun. Ramirez later was arrested and charged with the various offenses for which he was tried.

At his trial, the state proceeded upon a theory of transferred intent to murder. The state maintained that while the defendant intended to murder Washington, that intent was transferred to Mayri–Mar when he randomly shot her instead. In his jury instructions, the trial justice informed the jury that the theory of transferred intent also applied to the two charges of assault with a deadly weapon concerning Helen and Christopher.[1] The jury found the defendant guilty of assaulting Mayri–Mar with intent to murder; assaulting Christopher with a dangerous weapon; unlawfully discharging a firearm from a motor vehicle in a manner creating substantial risk of death or serious physical harm to another; and, unlawfully carrying an unlicensed firearm. However, the jury acquitted the defendant of the charge of assaulting Helen with a dangerous weapon.

The defendant now appeals. Additional facts will be supplied as needed.

## II

### Analysis

#### A. Motion for a New Trial

█ In his appeal, the defendant contends that the verdicts were legally inconsistent and not supported by the evidence. He maintains that the state failed to prove beyond a reasonable doubt that he fired the weapon, that he intended to murder Washington, and that he possessed a gun in his car. He asserts that the state did not prove its case beyond a reasonable doubt because the trial evidence also could

have been interpreted to infer his innocence. For example, he suggests that one could infer from the evidence that "an unseen back-seat passenger fired the gun."[2] In addition, he challenges the credibility of Sanchez and contends that she was not competent to testify.[3] For these reasons, he avers that the trial justice erred in denying his motion for a new trial.

█ "When considering a defendant's motion for a new trial, pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure, a trial justice is required to review all the trial evidence and to exercise his [or her] own independent judgment upon that evidence to determine whether it was sufficient to have enabled the jury to conclude the guilt of the defendant by proof beyond a reasonable doubt." *State v. Barrett*, 768 A.2d 929, 945–46 (R.I. 2001) (citing *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994)). "In exercising his or her independent judgment, the trial justice must pass upon the weight and the credibility of each of the trial witnesses, and in that regard is permitted to accept or reject the testimony offered by those trial witnesses." *Barrett*, 768 A.2d at 946 (citing *State v. Mattatall*, 603 A.2d 1098, 1108 (R.I.1992)). "When assessing the probative value of a witness's testimony, 'the jury is always free to accept, to reject, or to accord any amount of weight it chooses to that [witness's] testimony.'" *State v. Verrecchia*, 766 A.2d 377, 387 (R.I. 2001) (quoting *State v. Bertram*, 591 A.2d 14, 25 (R.I.1991)). "When the trial justice

---

1. No objection was made to that particular charge; consequently, it became the law of the case. *See State v. Garcia*, 743 A.2d 1038, 1054 (R.I.2000).

2. While one might infer innocence from such facts, one is not required to do so, and in this case, the jury chose not to so do. *See State v. Roddy*, 401 A.2d 23, 34–35 (R.I.1979).

3. The defendant did not challenge the competency of Sanchez below and has not identified any of the narrow exceptions to the raise-or-waive rule; consequently, we hold that this contention has been waived. *See State v. Breen*, 767 A.2d 50, 57 (R.I.2001).

has articulated a sufficient rationale for his or her decision to deny a defendant's motion for a new trial, that decision will be given great weight." *Barrett,* 768 A.2d at 946.

■ "This Court will not undertake to second-guess a trial justice's independent evaluation of the trial evidence unless we are able to discern from the record that in doing so, he or she has overlooked or misconceived material evidence relating to a critical trial issue, or if the justice was otherwise clearly wrong." *Id.* "Even were we to conclude that the trial evidence and the reasonable inferences drawn therefrom were so evenly balanced, or were such that reasonable minds could have arrived at a different conclusion with respect to that evidence, we would still not disturb the trial justice's decision denying the motion for a new trial." *Id.* "Furthermore, a trial justice, in articulating the rationale for his or her decision to deny a motion for a new trial, need not specifically refer to each speck of trial evidence that might support his or her decision, but need only relate to that evidence, which is sufficient to allow this Court to determine whether the trial justice has undertaken to comply with the applicable standards for his or her decision." *Id.*

### (i) Inconsistent Verdicts

■ At the hearing on the motion for a new trial, defense counsel observed that the jury simultaneously convicted Ramirez of assaulting Christopher with a dangerous weapon while acquitting him of assaulting Helen with a dangerous weapon. He contended that these verdicts were "legally inconsistent" because both Helen and Christopher were standing next to each other when the shots were fired.

■ "When a verdict has been attacked as inconsistent because of different outcomes for different counts in the indict-ment [or information], we have followed the rule laid down in *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 358–59 (1932) (Holmes, J.)." *State v. Allessio,* 762 A.2d 1190, 1191 (R.I. 2000). *See also Verrecchia,* 766 A.2d at 387; *State v. Romano,* 456 A.2d 746, 764 (R.I.1983); *State v. Leonardo,* 119 R.I. 7, 11–13, 375 A.2d 1388, 1390–91 (1977); *State v. Eckhart,* 117 R.I. 431, 438, 367 A.2d 1073, 1077 (1977). "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." *Allessio,* 762 A.2d at 1191 (quoting *Dunn,* 284 U.S. at 393, 52 S.Ct. at 190, 76 L.Ed. at 358). "[L]ogically inconsistent verdicts will be upheld as long as the verdicts are legally consistent." *Verrecchia,* 766 A.2d at 387 (quoting *Dunn,* 284 U.S. at 393, 52 S.Ct. at 190, 76 L.Ed. at 358).

In denying the defendant's motion for a new trial on this issue, the trial justice pointed out that at the time of the shooting, Helen and Christopher were not standing next to each other; rather, Christopher was out in the open playing on the sidewalk, while Helen was standing some distance away in the shelter of the apartment building's doorway. After noting this distinction, the trial justice found that the jury's verdicts on the two charges of assault with a dangerous weapon were not legally inconsistent. We agree with that finding. Indeed, in this case, we conclude that the verdicts were neither legally nor logically inconsistent. Consequently, the trial justice did not err in denying the defendant's motion for a new trial on the basis of legally inconsistent verdicts.

### (ii) Credibility of the Witnesses

At the new trial motion hearing, defense counsel also challenged the credibility of the testimony given by Sanchez and Helen. He pointed out what he believed to be

inconsistencies in their testimony to support this assertion. Sanchez, he noted, described the second car as black, observed only one occupant, in the driver's seat, and saw flashes from the driver's side of the car while it was still on Manton Avenue. In contrast, he noted that Helen testified that the car was dark red and that there was a female in the front passenger seat and that her niece was playing on Sisson Street when she was shot. Defense counsel concluded that; "[t]hose two witnesses, taken together, are inconsistent."

> The following colloquy then took place: "THE COURT: Evelin Sanchez did not focus on the passenger. She focused on the driver; identified your client. Helen Melendez doesn't put anybody else in that driver's seat that would somehow disconnect your client from the wheel of that car. The only person who puts your client in that driver's seat is Evelin Sanchez, right?
> "MR. LEPIZZERA: Right. Evelin Sanchez puts him in the driver's seat.
> "THE COURT: Well, does Helen Melendez take him out of the driver's seat?
> "MR. LEPIZZERA: She says she can't see who the driver is.
> "THE COURT: Well that doesn't make an inconsistent version, does it?"

Later, the trial justice found that "Evelin Sanchez was a most credible witness" who put the defendant "behind the wheel of the car" and who had observed him "brandishing a firearm just a few hours earlier * * *." He observed that there had been a recent altercation between the defendant and Washington, and a previous altercation between the defendant's girlfriend and Washington. He then stated that "[c]learly, there was a motive on the part of [the defendant] to do harm to Mr. Washington, and he acted upon that motive." With respect to the jury verdict, the trial justice

determined that it was "well founded on the evidence." He found that the jury did its job "sifting and weighing all the evidence to be sure that which they arrived at by way of a verdict was the one that they were comfortable with." He then concluded that "I'm comfortable with [the verdict] as well."

▪ Although the defendant asserts that there was insufficient evidence to prove that he possessed a gun in his car, that he fired that gun, or that he intended to murder Washington, we are not persuaded by his assertions. The record reveals that the defendant was observed to have been in possession of a gun only a few hours before the shooting; that he was driving the black car at the time of the shooting; that the black car was pursuing Washington's car; that he had a motive to harm Washington; and, that gunfire flashes emanated from the driver's side of the car. This evidence, we conclude, "was sufficient to have enabled the jury to conclude the guilt of the defendant by proof beyond a reasonable doubt." *Barrett*, 768 A.2d at 946.

Our review of the record also reveals that the trial justice carefully reviewed the trial evidence and succinctly articulated his rationale for denying the motion for a new trial. He did not overlook or misconceive material evidence relating to any critical trial issue and was not otherwise clearly wrong. Consequently, we conclude that the trial justice fully complied with the applicable standards required for his decision and that he did not err in denying the defendant's motion for a new trial.

### B. Assault with Intent to Commit Murder

▪ The defendant's contention that the state failed to prove beyond a reason-

able doubt any intention on his part to murder Washington is without merit.

 "[T]he proper mental state required to convict a defendant of assault with intent to murder * * * [may] be inferred from conduct amounting to a wanton and reckless disregard for the safety of others." *State v. Nhek,* 687 A.2d 81, 83 (R.I.1997). Here the requisite wanton and reckless conduct was that of shooting a gun out the window of a speeding car while traveling on a busy highway. Indeed, the use of a gun in a second-degree murder case is sufficient by its use to prove malice, and permits reasonable inferences to be drawn from such gun use that a defendant formed an intent to murder the victim. *See Barrett,* 768 A.2d at 944. Certainly, it is reasonable to infer that this defendant committed an assault with intent to murder when he fired several successive gunshots on a busy highway from out the window of his speeding car. Consequently, we conclude that the state has proven beyond a reasonable doubt that the defendant formed the necessary intent to commit the crime of assault with intent to murder.

Lastly, the defendant attempts to raise here, for the first time, that his convictions are legally inconsistent because he cannot be convicted of assault with intent to murder and the lesser-included offense of assault with a dangerous weapon against a single victim when there was only one intended victim—namely, Washington.

The record before us reveals that the defendant neither raised this issue below nor identified any of the narrow exceptions to the raise-or-waive rule that would cause us now to consider this issue. Consequently, we deem this appellate contention to have been waived. *See Breen,* 767 A.2d at 57. However, even if it had been raised properly below, we are satisfied that it is lacking in merit and would be of no assistance to the defendant in this appeal.

For the foregoing reasons, the defendant's appeal is denied and dismissed and the judgment appealed from is affirmed. The papers in this case are to be remanded to the Superior Court.