**STATE**

**v.**

**Timothy STONE.**

**No. 2006-24-C.A.**

Supreme Court of Rhode Island.

June 20, 2007.

Jane M. McSoley, Esq., Providence, for Plaintiff.

Paula Rosin, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on February 27, 2007, on appeal of the defendant, Timothy Stone (Stone or defendant), from a Superior Court judgment of conviction, in connection with a multi-count indictment, stemming from a bloody armed robbery, that culminated in a gun battle in one of Providence's premier restaurants. The defendant was indicted and subsequently convicted of first-degree robbery; assault with intent to murder; commission of a crime of violence (robbery) while armed with a firearm; carrying a pistol without a license; possession of a firearm after a previous conviction of a crime of violence;[1] and four counts of assault with a dangerous weapon, upon four individuals, including two police officers. After his motion for a new trial was denied, Stone was sentenced to life impris-

1. To avoid prejudice, the parties agreed that this count would not go to the jury, but rather, if the jury found Stone guilty of gun possession, he would also be convicted of possession of a firearm after a previous conviction of a crime of violence. Count 10, cocaine possession, was severed, and the state ultimately dismissed that charge.

onment and multiple lengthy terms of confinement at the Adult Correctional Institutions.[2] For the reasons stated herein, we affirm the judgment.

**Facts and Travel**

On June 11, 2000, Joseph Koch (Koch), a Connecticut cabdriver, picked up two men in Connecticut who asked to be driven to Providence. Because of the distance, Koch requested payment in advance. The older of the two men, later identified as defendant, gave Koch a $100 bill. Koch put the money in his front shirt pocket. During the drive to Providence, defendant sat on the right side of the rear seat, and the younger man sat directly behind Koch.

Upon arriving in Providence, Koch was directed to stop at a public telephone so that the younger man could make a call. Koch testified that when the taxi's interior light went on as the younger man left the cab, defendant remained seated in the rear seat. The younger man returned to the car and gave Koch directions. While stopped at a red light, Koch was shot in the back of the head and was unconscious for a time. When he regained consciousness, the two men were gone and the cab was traveling in the wrong direction on a one-way street. Koch sounded the car's horn in an attempt to attract help. Benjamin Daudelin (Daudelin), a security officer from Johnson and Wales University, discovered Koch, who was bleeding profusely from the neck. Daudelin called for a rescue and administered first aid. A second security officer from Johnson and Wales, William LaPierre, heard the gunshots and saw Koch outside the cab, with blood pumping from his neck. Koch told the officers that he had been shot by his passengers. Although Koch was able to identify his assailant at trial, he testified that rescue workers cut off his clothes and that he did not know what happened to the money that was in his pocket.

Koch was transported by ambulance to Rhode Island Hospital, where he was treated for a gunshot wound by Dr. Jeffrey Cox (Dr. Cox). Doctor Cox testified that in his opinion, Koch was shot at a close distance ranging from one to two feet, from the right rear of the vehicle, with the bullet entering the back of his head, and exiting behind his left ear. Doctor Cox described the injury as one with the potential to cause "significant neurological deficit, if not death."

Unfortunately, Koch was not Stone's only victim. Laurence Russolino (Russolino) and Armando Gomes Alves (Alves), employees at Capriccio's restaurant, a well-known Providence eatery, testified that sometime after 10 p.m., they had finished their shifts and were standing outside Capriccio's when they heard gunshots. Russolino testified that he noticed a taxi stopped in the middle of the street and saw two men leave the vehicle. One of the men, later identified as defendant, began walking toward Capriccio's. The other man ran off toward Waterplace Park and was not apprehended.

According to Russolino, as defendant approached the restaurant, he dropped his firearm, but then picked it up and put it in

2. Stone was sentenced to the following: on count 1, robbery, life imprisonment; on count 2, assault with intent to murder, twenty years; on count 3, commission of a crime of violence while armed with a firearm, ten years; on count 4, carrying a firearm without a license, ten years; on count 5, possession of a firearm after a previous conviction of a crime of violence, ten years, with the sentences on counts 1–5 to run concurrently. On counts 6–9, assault with a dangerous weapon, defendant was sentenced to twenty years on each count with the sentences to run concurrently to each other, but consecutively to the sentences imposed on counts 1–5.

his pants. Russolino testified that he and Alves returned to Capriccio's and Stone ran after them. Once inside the restaurant, Russolino yelled out for someone to call 911 and then attempted to flee by the front stairway; however, he was unable to do so because the restaurant's front door was locked with a chain. Russolino ran back downstairs, where he encountered Stone beating Alves on the head with the gun.

Alves testified that after Stone chased him into Capriccio's, the two men struggled for the firearm. Alves managed to hold onto the gun long enough to empty the bullets from the clip. When Stone grabbed the weapon, Alves ran into the dining area. Stone caught him, attacked him with the gun and ripped off his gold necklace. As a result, Alves suffered serious head injuries; he was hospitalized and required stitches and staples to his skull. He was also shot in the hand during the scuffle, and has permanent scars.

Richard Dowe (Dowe), a cook at Capriccio's, saw defendant chase Alves into the restaurant. He followed the pair into the dining area, and when Stone began pistol-whipping Alves, Dowe ran into the kitchen and alerted a chef, John Qupis (Qupis). When Qupis entered the dining area, Stone turned and aimed the gun at him and said that he just wanted to leave. Before Stone could escape, however, Dowe came out of the kitchen and ran into him. The defendant grabbed Dowe around the neck, put the gun to his head, and told him "[d]on't worry, I won't shoot. Get me out of here." With the firearm held to his neck, Dowe led Stone up the front stairs, to the locked front door. When defendant saw the chain on the door as well as flashing police lights, he panicked.

While this was happening, Providence police officers Brian McNally (Officer McNally) and Frank Villella arrived and entered Capriccio's through the rear entrance. They went down the back stairs, through the kitchen area, and to the front door where they came upon Stone holding a gun to Dowe's head and threatening to kill him. When Officer McNally told Stone to drop the weapon, Stone turned and aimed the gun at the officers. After repeatedly ordering defendant to drop the firearm, the officers fired their weapons. Stone was shot in the wrist and was taken into custody. Police seized several items at the scene, including a $100 bill and Stone's blue backpack.

A grand jury returned a ten-count indictment against defendant, charging, *inter alia,* robbery, assault with intent to murder, commission of a crime of violence while armed, and assault with a dangerous weapon. Before trial, pursuant to Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure,[3] Stone moved to dismiss the robbery count, based on a lack of probable cause. The defendant argued that no evidence was presented to the grand jury that he took money or property by force or violence or by placing Koch in fear, the essential elements of robbery. The trial justice denied the motion and found that he had "no jurisdiction at this point to dismiss any count of the indictment based upon a lack of probable cause" and that this issue should be addressed in a motion for judgment of acquittal, pursu-

3. Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure, entitled "Pleadings and motions before trial—*Defenses and Objections,*" states in pertinent part:

"The defense of double jeopardy and all other defenses and objections based on defects in the institution of the prosecution or in the indictment, information, or complaint other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial."

ant to Rule 29 of the Superior Court Rules of Criminal Procedure.

The defendant also moved to dismiss count 3, which charged Stone with committing a crime of violence (robbery) when armed with or having available a firearm.[4] Stone argued that simultaneous convictions for first-degree robbery[5] and committing a crime of violence while armed with a firearm would violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution as well as article 1, section 7, of the Rhode Island Constitution. The defendant argued that these counts should merge because both crimes stemmed from a single act. Citing this Court's opinion in *State v. Rodriguez,* 822 A.2d 894 (R.I.2003), the trial justice denied the motion and held that the counts do not merge because the crime of first-degree robbery does not necessarily involve the use of a firearm.

Additionally, the state presented the testimony of Dr. Cox, the emergency room physician who treated Koch for the bullet wound to his head. Over defendant's objection, Dr. Cox was permitted to testify about the trajectory of the bullet, and opined that the bullet was fired from the right rear of the vehicle, where Stone had been sitting.

After the jury returned verdicts of guilty, defendant moved for a new trial, and argued that the evidence was legally insufficient to support a conviction for robbery because the state failed to prove a takingthe theft element of robbery. The trial justice disagreed, finding that although there was no direct evidence that defendant took the $100 bill, there was ample circumstantial proof that defendant took the money from Koch's shirt pocket after he shot him.

### Issues

The defendant raises the following issues on appeal: (1) the trial justice erred in denying his motion to dismiss count 3, committing a crime of violence while armed, because Stone's conviction under that statute, together with the finding of guilt for first-degree robbery, violates the Double Jeopardy Clause; (2) the trial justice erred in denying his motion to dismiss the robbery count based on the insufficiency of the evidence presented to the grand jury; (3) the trial justice erred in denying his motion for a new trial on the robbery charge, based on the insufficiency of the evidence; and (4) the trial justice erred in allowing Dr. Cox to testify as an expert as to the trajectory of the bullet that struck Koch.

### Standard of Review

This Court's review of a claimed violation of the Double Jeopardy Clause is a mixed question of law and fact of constitutional dimension; thus, our review is *de novo. State v. Snell,* 892 A.2d 108, 115 (R.I.2006).

4. General Laws 1956 § 11–47–3, entitled "Carrying dangerous weapons or substances when committing crime of violence[,]" states in pertinent part: "No person shall commit or attempt to commit a crime of violence when armed with or having available any firearm, explosive substance, noxious liquid, gas or substance, or acid."

5. General Laws 1956 § 11–39–1(a), entitled "Penalty for robbery[,]" states in pertinent part:

"(a) Every person who shall commit: (1) robbery by use of a dangerous weapon; (2) robbery where a victim is injured; or (3) robbery where the victim is a person who is severely impaired or an elderly person; shall be guilty of first degree robbery and shall be imprisoned for not less than ten (10) years and may be imprisoned for life * * *."

It is well settled that when reviewing a motion for a new trial, the trial justice must determine "whether the evidence adduced at trial is sufficient for the jury to conclude guilt beyond a reasonable doubt." *State v. Scurry,* 636 A.2d 719, 725 (R.I.1994). A trial justice's ruling on a new trial motion "is entitled to great weight," *State v. Dame,* 560 A.2d 330, 332 (R.I.1989), and will not be disturbed on appeal, provided that the trial justice has "articulated an adequate rationale" for denying a new trial, unless he or she misconceived or overlooked material evidence. *State v. Bleau,* 668 A.2d 642, 646 (R.I. 1995).

Lastly, admissibility of expert testimony is within the trial justice's discretion, and our review is restricted to determining whether the trial justice abused his or her discretion. *State v. Rieger,* 763 A.2d 997, 1004 (R.I.2001) (citing *State v. Morales,* 621 A.2d 1247, 1249 (R.I.1993)).

**Double Jeopardy**

The bar against being twice placed in jeopardy for the same offense contained in the Fifth Amendment to the United States Constitution [6] is mirrored in article 1, section 7, of the Rhode Island Constitution, which provides that "[n]o person shall be subject for the same offense to be twice put in jeopardy." In determining whether an accused is in danger of being tried or punished twice for the same offense, this Court has adopted the "same evidence" test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304. As such, a defendant cannot be prosecuted or punished twice if "the same evidence suffices to establish both crimes[.]" *State v. Davis,* 120 R.I. 82, 86, 384 A.2d 1061, 1064 (1978).

Stone argues that his dual convictions under G.L.1956 § 11–47–3, for possession of a dangerous weapon when committing a crime of violence, and for first-degree robbery, based on G.L.1956 § 11–39–1(a), violate the double jeopardy bar. The defendant cites *State v. Ashness,* 461 A.2d 659 (R.I.1983), *State v. Grullon,* 117 R.I. 682, 371 A.2d 265 (1977), and *State v. Boudreau,* 113 R.I. 497, 322 A.2d 626 (1974), for the proposition that a defendant may not, consistent with the constitutional guarantee against double jeopardy, be convicted of a crime of violence involving the use of a dangerous weapon (in this case robbery) and also convicted of violating § 11–47–3, "when the identical crime of violence is the basis of the latter charge." The defendant's reliance on those cases, however, is misplaced, because the underlying crime of violence in each of those cases was assault with a dangerous weapon, not robbery. *Ashness,* 461 A.2d at 667; *Grullon,* 117 R.I. at 685, 371 A.2d at 267; *Boudreau,* 113 R.I. at 503, 322 A.2d at 629.

Indeed, contrary to defendant's assertion, this Court's reasoning in *Ashness,* 461 A.2d at 666–67, establishes that dual convictions for carrying a dangerous weapon when committing a crime of violence and first-degree robbery do *not* constitute a double jeopardy violation. In *Ashness,* the defendant was charged with robbery, committing a crime of violence while armed,

6. The Fifth Amendment to the United States Constitution provides, in pertinent part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."

and assault with a dangerous weapon for his participation in an armed robbery of a jewelry store. *Id.* at 662, 666. At trial, the state contended that there was "no double jeopardy violation because the indictment state[d] that the underlying crime of violence [was] the robbery[,]" not the assault with a dangerous weapon. *Id.* at 666. The state argued that because there was "an additional element to the proof of robbery which is not an element of the proof of [the] commission of a crime of violence while armed[,]" there was no double jeopardy bar. *Id.* The trial justice accepted the state's argument and denied defendant's motion.

This Court disagreed. We declared that "if the combination of the crime-of-violence charge with *either* the robbery *or* the assault with a dangerous weapon counts constitutes double jeopardy, then it must be dismissed." *Ashness,* 461 A.2d at 666–67. We held, based on our previous holdings in *Boudreau* and *Grullon,* that "either the crime-of-violence count *or* the assault-with-a-dangerous-weapon count [against Ashness] must be dismissed." *Id.* at 667 (emphasis added). Rather than discerning a double jeopardy violation based on the combination of the robbery and crime of violence charges, we looked to the assault with a dangerous weapon charge to conclude that Ashness had twice been placed in jeopardy. *Id.* at 666–67.

In this case, in light of *Blockburger's* "same evidence" test, as adopted by this Court in *Davis,* it is clear that the state did not transgress the double jeopardy bar by seeking a conviction for first-degree robbery and the commission of a crime of violence while armed with a firearm, because each offense includes an additional element of proof that is not contained in the other.

Section 11–47–3 provides that "[n]o person shall commit or attempt to commit a crime of violence when armed with or having available any firearm * * *."[7] Clearly, a crime of violence and possession of a firearm are essential elements under § 11–47–3. With respect to the crime of robbery, however, we specifically have held that "possession or use of a firearm is neither an essential element of common-law robbery nor of the statutory offense of first-degree robbery." *State v. Arroyo,* 844 A.2d 163, 171 (R.I.2004). Furthermore, in *Arroyo,* we reached "this conclusion foremost because an essential element of first-degree robbery is the 'use of a dangerous weapon,' which can be a number of implements capable of causing serious harm, and not necessarily a firearm." *Id.*

■ To avoid a double jeopardy violation, *each* offense must require an element of proof that is not required by the other. Stone's conviction for first-degree robbery under § 11–39–1(a) required proof not only of all of the elements of common-law robbery,[8] but also, proof of: "(1) robbery by use of a dangerous weapon; [*or* ] (2)

7. Section 11–47–3 also punishes the commission of (or attempted commission of) "a crime of violence when armed with or having available any * * * explosive substance, noxious liquid, gas or substance, or acid." Stone was indicted for violating § 11–47–3 "when armed and having available a firearm, to wit, a 9 mm High Point * * *."

8. Section 11–39–1, which establishes the penalties for robbery, fails to set forth the elements of that crime; this Court has held that, for this reason, "the common law definition is applicable. * * * This Court defines robbery as 'the felonious taking of money or goods of any value from the person of another, or in his presence, against his will, by violence, or putting him in fear.' " *State v. Rodriquez,* 731 A.2d 726, 729 (R.I.1999) (quoting *State v. Shepard,* 726 A.2d 1138, 1140 (R.I.1999) (emphasis omitted)).

robbery where a victim is injured; *or* (3) robbery where the victim is a person who is severely impaired or an elderly person * * *." *Id.* (Emphases added.) Thus, the jury permissibly could have returned a verdict of guilty based on *either* Stone's use of a dangerous weapon *or* based on the injury inflicted upon Koch during the course of the robbery. The jury returned a general verdict of guilty on the first-degree robbery charge, presumptively based on evidence that Koch was robbed and defendant used a dangerous weapon, or that Koch sustained serious injury. Conversely, a conviction for committing a crime of violence while armed or having available a firearm under § 11–47–3 does not require that the weapon be used or that there be an injury to the victim.

We note that this holding is consistent with our decision in *Rodriguez,* 822 A.2d at 906–07, in which we held that convictions for murder and using a firearm while committing a crime of violence (murder) do not offend the Double Jeopardy Clause. In *Rodriguez,* we held that the two crimes "cannot merge because each require[s] proof of a separate element (murder and using a firearm, respectively) that the other d[oes] not; thus, they constitute[] separate crimes. Hence, no violation of the state constitutional bar against double jeopardy exist[s] in this case." *Id.*

Stone contends that *Rodriguez* can be distinguished from the facts in this case because Rodriguez was charged under § 11–47–3.2 for "[*u]sing* a firearm when committing a crime of violence," *Rodriguez,* 822 A.2d at 906, while Stone was charged under § 11–47–3 for "*carrying* [a] dangerous weapon * * * when committing [a] crime of violence." The defendant argues that this difference is significant because § 11–47–3.2[9] requires a consecutive sentence to that imposed for the underlying offense, while § 11–47–3 does not. Under the facts of this case, this distinction is without merit.

In *State v. McGuy,* 841 A.2d 1109 (R.I. 2003), a case decided on other grounds, we noted that were we to reach the question of merger and apply *Rodriguez* to the facts in *McGuy,* a conviction for second-degree murder and for *carrying* a dangerous weapon when committing a crime of violence would not violate the double-jeopardy bar because each offense "require[s] proof of a fact that the other did not; to wit: murder and carrying a dangerous weapon, respectively." *Id.* at 1115–16. A similar analysis applies to the indictment in this case; thus, we deny Stone's appeal based on a claim of double jeopardy.

**Grand Jury Indictment**

The defendant next asserts that the trial justice erred when he refused to dismiss the robbery count on the ground that no evidence was presented to the grand jury to establish a taking of money or property, an essential element of first-degree robbery under § 11–39–1(a). Stone argues that because a sentence of life imprisonment may be imposed for first-degree robbery, it must be presented to a grand jury for indictment under article 1, section 7, of the Rhode Island Constitution[10] and G.L. 1956 § 12–12–1.1,[11] and that in this case,

9. Section 11–47–3.2(a) states in pertinent part: "[a]ny sentence imposed upon a person pursuant to this section shall be imposed consecutively to and not concurrently with any sentence imposed for the underlying crimes * * *."

10. Article 1, section 7, of the Rhode Island Constitution provides in pertinent part: "no person shall be held to answer for any offense which is punishable by death or by imprisonment for life unless on presentment or indictment by a grand jury * * *."

11. General Laws 1956 § 12–12–1.1 provides

the evidence was not sufficient to support first-degree robbery. We disagree.

Although defendant rests his argument on lack of proof of a taking or theft, his argument addresses the *sufficiency* of the evidence presented to the grand jury, an area into which the courts do not intrude. This Court consistently has refused to invade the province of the grand jury in its evaluation of the evidence and we decline to do so now. It is well established that a "grand jury may decide whether the quality of the evidence presented to it is sufficient to warrant the return of an indictment * * * [and that] the rules of evidence that might apply to a trial do not apply to a grand jury." *State v. Miller,* 679 A.2d 867, 870 (R.I.1996). In *Miller,* we "evidenced our long reliance on *Costello v. United States,* 350 U.S. 359, 363–64, 76 S.Ct. 406, 100 L.Ed. 397 (1956), in which the United States Supreme Court declined to establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence." *State v. Franco,* 750 A.2d 415, 419 (R.I.2000). We have "declined to micro-manage grand jury procedures in the past," *id.,* and we adhere to that rule now.

Moreover, any defect with respect to the sufficiency of the evidence presented to the grand jury is cured by a finding of guilt after trial because "conviction by a petit jury after a full trial on the merits renders harmless any defect occurring during the grand jury proceedings." *State v. Tempest,* 660 A.2d 278, 280 (R.I. 1995). Furthermore, the "subsequent guilty verdict means not only that there was probable cause to believe that [defendant was] guilty as charged, but also that [he is] in fact guilty as charged beyond a reasonable doubt * * * [and that] any error in the grand jury proceeding connected with the charging decision was harmless * * *." *Id.* (quoting *United States v. Mechanik,* 475 U.S. 66, 70, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)).

**Sufficiency of the Evidence**

The defendant next contends that the trial justice erroneously denied his motion for a new trial on the robbery count because, he argues, the evidence adduced at trial was insufficient to establish beyond a reasonable doubt that he stole money or property from Koch's person, an essential element of robbery.

In ruling on a motion for a new trial pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure, "the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Stansell,* 909 A.2d 505, 511 (R.I.2006) (quoting *State v. Davis,* 877 A.2d 642, 646 (R.I.2005)). "When the trial justice has articulated a sufficient rationale for his or her decision to deny a defendant's motion for a new trial, that decision will be given great weight." *Arroyo,* 844 A.2d at 173 (quoting *State v. Ramirez,* 786 A.2d 368, 372–73 (R.I.2001)).

In this case, after hearing Stone's argument and noting that there was no direct evidence that defendant took the $100 bill discovered at the scene, the trial justice found that there was ample circumstantial evidence that Stone took the money from Koch's shirt. The $100 bill was found in the area where the struggle occurred, outside the rear entrance to Capriccio's, and loose money was found throughout the res-

that "[a]n offense which may be punished by a term of life imprisonment shall be prosecuted by indictment unless the defendant, with the consent of the attorney general and leave of the court, waives indictment, in which event it may be prosecuted by information."

taurant. Noting that the $100 bill "was found in the vicinity of other materials belonging to this defendant," including his backpack, the trial justice found that the jury could properly draw an inference that defendant took the money after he shot Koch.

It is well established that "[i]nferences and presumptions are a staple of our adversary system of factfinding." *State v. Ventre,* 910 A.2d 190, 198 n. 5 (R.I.2006). This Court previously has held that the test for determining whether circumstantial evidence meets the burden of proof in a criminal trial is whether the evidence constitutes proof beyond a reasonable doubt or if it raises merely a conjecture or suspicion of guilt. *State v. Kaba,* 798 A.2d 383, 393 (R.I.2002). "Under this test, it is possible for the state to prove guilt by a process of logical deduction, reasoning from an established circumstantial fact through a series of inferences to the ultimate conclusion of guilt." *Id.* (quoting *State v. Caruolo,* 524 A.2d 575, 581–82 (R.I.1987)).

In arguing for a new trial, defendant asserts that the state utilized an impermissible "pyramiding of inferences" to establish the elements of first-degree robbery. We are satisfied that in finding that the state produced ample circumstantial evidence to support a conviction for first-degree robbery, the trial justice appropriately exercised his independent judgment; he did not overlook or misconceive material evidence, and he was not clearly wrong. We are of the opinion that the state established defendant's guilt beyond a reasonable doubt "by a process of logical deduction, reasoning from an established circumstantial fact" and did not "merely raise[] a suspicion or conjecture of guilt." *Kaba,* 798 A.2d at 393.

### Admission of Dr. Cox's Expert Testimony

The defendant's final point of appeal is his contention that the trial justice abused his discretion when he permitted the emergency room doctor to testify as to the trajectory of the bullet that struck Koch. Stone argues that Dr. Cox had no demonstrated expertise in the science of ballistics.

At trial, the state established, *inter alia,* that Dr. Cox, who was board certified in emergency medicine, had treated approximately 1,000 gunshot wounds, including 100 to the head and neck area. The state inquired of the witness, "based upon your observation, your experience, is there any way you would be able to determine the angle of which that entrance wound would have entered and exited?" Before Dr. Cox could respond, defendant objected, arguing that "unless he has got some experience in the penetration of skin with projectiles" the testimony should be excluded. The trial justice overruled defendant's objection and permitted the witness to answer.

The admission of expert testimony in Rhode Island is governed by Rule 702 of the Rhode Island Rules of Evidence which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion." The decision to permit a witness to testify as an expert is within the trial justice's sound discretion and rests upon such factors as the "witness's education, training, employment, or prior experiences." *State v. Villani,* 491 A.2d 976, 978–79 (R.I.1985).

After careful review of the record in this case, we are satisfied that the trial justice properly allowed this expert opin-

ion evidence. In the context of this case and based on his training and experience in having treated over 1,000 gunshot wounds, Dr. Cox was qualified to give an opinion about the trajectory of the bullet in the context of the facts of this case. Furthermore, even if the admission of this testimony was erroneous, the error would be harmless based on the overwhelming evidence of Stone's guilt, including eyewitness testimony. *See State v. Garcia,* 883 A.2d 1131, 1140 (R.I.2005) (holding that "[w]hen uncontradicted and admissible trial evidence clearly establishes that the defendant has committed the crime, the introduction of inadmissible, cumulative evidence is harmless error").

**Conclusion**

For the foregoing reasons, we affirm the judgment and remand the papers to the Superior Court.