371 A.2d 596.

State *vs.* George C. Levitt.

APRIL 1, 1977.

Present: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. This two-count indictment charges the defendant with an assault with a dangerous weapon, to wit, a pistol, and with committing an abominable and detestable crime against nature, to wit, fellatio. The Superior Court trial justice reduced the first count to simple assault at the close of the state's case and, after the jury found the defendant guilty on both counts, imposed a sentence of 10 years on the fellatio count and a deferred sentence on the other charge. The case is now here on the defendant's appeal, which relates solely to the fellatio conviction.

At the trial the prosecution called as witnesses the victim, her husband and daughter, one of her coworkers, two detectives from the South Kingstown Police Department and a doctor who gave the victim emergency treat-

ment. The substance of their collective testimony was as follows: One Edward McDermott tricked the victim into driving to and entering defendant's home; then, after McDermott's departure, defendant assaulted the victim, beat her severely, threatened her with a gun, tied her up and forced her to perform an act of fellatio upon him. At the close of the state's case, the defense moved for a continuance of "a few days" to enable it to secure McDermott's attendance as a witness. When that motion was denied, defendant rested without introducing any evidence. Neither then nor following the rendition of the verdict did he challenge the sufficiency of the state's evidence by moving for either a judgment of acquittal or a new trial.[1]

## *Vagueness*

Initially, defendant attacks the controlling statute, G.L. 1956 (1969 Reenactment) §11-10-1,[2] on the ground that the general term "abominable and detestable crime against nature" used therein fails to describe the forbidden acts explicitly. He argues that the statute is therefore so vague and uncertain as to violate the due process clause of the fourteenth amendment to the Federal Constitution.[3]

---

[1]The defendant did move for a new trial on the ground that the trial justice's failure to grant a continuance had deprived him of a fair trial. He has not assigned the denial of that motion as a ground of appeal.

[2]General Laws 1956 (1969 Reenactment) §11-10-1 provides:
"Abominable and detestable crime against nature.—Every person who shall be convicted of the abominable and detestable crime against nature, either with mankind or with any beast, shall be imprisoned not exceeding twenty (20) years nor less than seven (7) years."

[3]The defendant also claims a violation of the clause of art. I, §10 of our state constitution that guarantees to an accused in a criminal proceeding the right "to be informed of the nature and cause of the accusation." That provision is concerned with the essentials of indictments, not of statutes; it requires that an indictment clearly inform the defendant of the accusation against him so that he may defend the same

36

It is, of course, a fundamental principle of due process that the state may not hold an individual "* * * 'criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Rose* v. *Locke,* 423 U.S. 48, 49, 96 S.Ct. 243, 244, 46 L.Ed.2d 185, 188 (1975), *quoting United States* v. *Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996 (1954). A statute challenged on grounds of impermissible vagueness should not, however, be tested for constitutional specificity in a vacuum, but should instead be judged in light of its common law meaning, its statutory history and prior judicial interpretations of its particular terms. *Wainwright* v. *Stone,* 414 U.S. 21, 22-23, 94 S.Ct. 190, 192, 38 L.Ed.2d 179, 182 (1973); *Commonwealth* v. *Balthazar,* 366 Mass. 298, 300, 318 N.E. 2d 478, 480 (1974).

In applying these interpretative standards to §11-10-1, we need go no further than *State* v. *Milne,* 95 R.I. 315, 322, 187 A.2d 136, 140 (1962), *appeal dismissed,* 373 U.S. 542, 83 S.Ct. 1539, 10 L.Ed.2d 687 (1963), which held that fellatio falls within the statutory proscription. That judicial construction provided specificity to what otherwise might be considered an ambiguous criminal statute, fixed its meaning for subsequent cases, and placed fellatio in the statute as definitely as if the act had been so amended by the Legislature. *Winters* v. *New York,* 333 U.S. 507, 514, 68 S.Ct. 665, 669, 92 L.Ed. 840, 849 (1948). Thus, when defendant committed fellatio, he was on clear notice that his conduct was criminal under the statute as construed, *Wainwright* v. *Stone, supra* at 23, 94 S.Ct. at 192-93, 38 L.Ed.2d at 182, and he is now foreclosed from asserting a lack of fair warning as a defense to his prosecution for

and later plead a conviction or an acquittal in bar of a subsequent prosecution for the same offense. *State* v. *Domanski,* 57 R. I. 500, 504, 190 A. 854, 857 (1937); *State* v. *Smith,* 56 R. I. 168, 177, 184 A. 494, 498 (1936). Inasmuch as this defendant does not challenge the indictment in this case, his reliance on art. I, §10 is misplaced.

that crime. *Rose* v. *Locke, supra* at 51, 96 S.Ct. at 245, 46 L.Ed.2d at 189. As applied to him, therefore, the controlling statute satisfies the due process requirements of clarity and specificity. *Accord, People* v. *Howell,* 396 Mich. 16, 21-22, 238 N.W.2d 148, 150 (1976); *State* v. *Lemire,* 115 N.H. 526, 533, 345 A.2d 906, 911-12 (1975).

The cases relied on by defendant to support his view are clearly distinguishable. In neither *State* v. *Sharpe,* 30 Ohio Op. 2d 432, 205 N.E.2d 113 (Ct. App. 1965) ("unnatural sex act"), nor *Harris* v. *State,* 457 P.2d 638 (Alas. 1969) ("crime against nature"), was a prior judicial interpretation available to give the statute meaning under the principle of *Wainwright* v. *Stone, supra.* In *Commonwealth* v. *Balthazar, supra,* the court, far from striking down the statute, as defendant asserts in his brief, found that the prohibition against "unnatural and lascivious act[s]," although inapplicable to the private, consensual conduct of adults, was not unconstitutionally vague as applied to an accused who forced a woman to commit an act of fellatio. *Id.* at 302, 318 N.E.2d at 481. And although the Florida court in *Franklin* v. *State,* 257 So.2d 21 (Fla. 1971), held that its own prior interpretations were not sufficient to cure the vagueness of the statutory language ("abominable and detestable crime against nature"), the Supreme Court rejected that holding when it reviewed the Florida statute. *Wainwright* v. *Stone, supra* at 23-24, 94 S.Ct. at 193, 38 L.Ed.2d at 182. None of these cases gives us the slightest reason to conclude that §11-10-1 is unconstitutionally vague as applied to the act of defendant Levitt in the present case.

## Consent and the Right of Privacy

The defendant next argues that the governing statute, insofar as it purports to proscribe sexual acts committed in private by consenting adults, violates his constitutional right of privacy as explicated in recent Supreme Court

decisions.[4] The defendant lacks standing to press this contention, however, because of the traditional rule that bars a person to whom a statute may be constitutionally applied from challenging that statute on the ground that it may conceivably be applied unconstitutionally to others in hypothetical situations not before the court. *Broadrick* v. *Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973); *State* v. *Picillo*, 105 R.I. 364, 369, 252 A.2d 191, 194 (1969). That principle applies in this case because, notwithstanding the positive, uncontradicted and unimpeached testimony that the act of fellatio in this case was nonconsensual, defendant is here urging the claim of a hypothetical consenting adult to an asserted constitutional protection. Consequently, even were we to hold §11-10-1 unconstitutional as applied to consenting adults, defendant would take nothing; his conviction would still stand because it is predicated upon the undeniably constitutional application of the statute to a sexual act forced upon an unwilling victim. *Cf. Commonwealth* v. *Balthazar, supra* at 302, 318 N.E.2d at 481. This therefore, is not a proper case for us to consider the constitutionality of §11-10-1 as applied to the private sexual activities of consenting adults. *See Commonwealth* v. *LaBella,* 364 Mass. 550, 553-54, 306 N.E.2d 813, 815-16 (1974).

### *Jury Instructions*

As a corollary to the foregoing contention, defendant also argues that the trial justice erred (1) in instructing the jury that "* * * all unnatural sexual copulation was

---

[4]*e.g., Roe* v. *Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (woman's right to terminate pregnancy); *Eisenstadt* v. *Baird.* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (right of unmarried persons to use contraceptives); *Griswold* v. *Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right of married persons to use contraceptives); *Stanley* v. *Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22L.Ed.2d 542 (1969) (right to possess obscene materials in the privacy of the home).

to be made unlawful * * * without regard to whether somebody is willing or unwilling * * *"; and (2) in failing to instruct that consent, if found, would be a defense. Although both errors charged may in effect raise the same issue, the short answer to each is that defendant's counsel expressly stated at the conclusion of the instructions that he had no objection to the charge, as given. The defendant is therefore precluded by both Super. R. Crim. P. 30[5] and prior decisional law from assigning as error any portion of the charge as given or any omission therefrom. *State* v. *Crescenzo,* 114 R.I. 242, 258, 332 A.2d 421, 430-31 (1975); *State* v. *Card,* 105 R.I. 753, 758, 255 A.2d 727, 731 (1969).

### Incompetency of Counsel

The defendant next attacks the judgment of conviction on the ground that his retained trial counsel was so incompetent that he was deprived of his state and federal constitutional right to the effective assistance of an attorney. Although we consider this claim to be more properly cognizable in post-conviction proceedings, we have not always abided by that sentiment, and in the past we have occasionally entertained a claim of lack of effective counsel on direct review. *State* v. *Ambrosino,* 114 R.I. 99, 105-06, 329 A.2d 398, 401-02 (1974); *State* v. *Desroches,* 110 R.I. 497, 502-06, 293 A.2d 913, 916-18 (1972); *State* v. *Correia,* 106 R.I. 655, 664-66, 262 A.2d 619, 624-25 (1970). However, in neither the *Desroches* nor the *Correia* case did the defendant claim that his attorney was incompetent. Desroches apparently based his claim on the trial court's action in granting his motion to dismiss the public defender and permitting him to defend himself; Correia

---

[5]Super. R. Crim. P. 30 reads in pertinent part:
"No party may assign as error any portion of the charge or ommission thereform unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

objected to the trial justice's refusal to permit withdrawal from the case by an attorney who, by reason of Correia's own lack of cooperation, was not fully prepared for trial. In those instances, then, the appeals were based on specific rulings by the trial justices that allegedly deprived the defendants of the effective assistance of counsel. Our action in reviewing those rulings was therefore consistent with the fundamental principle that only specific rulings of a trial justice are reviewable on direct appeal. *State v. Ambrosino, supra* at 104-05 & n.2, 329 A.2d at 401 & n.2; *State v. Wright,* 105 R.I. 556, 564-65, 253 A.2d 593, 597-98 (1969); *State v. Franklin,* 103 R.I. 715, 728, 241 A.2d 219, 227 (1968); *State v. Quattrocchi,* 103 R.I. 115, 117-18, 235 A.2d 99, 101 (1967).

In the present case, defendant does not claim that any specific ruling of the trial justice deprived him of the effective assistance of counsel. Rather, he objects to the manner in which his allegedly inexperienced counsel conducted his defense. For example, he claims that his attorney did not comprehend the technique of introducing prior inconsistent statements and that he did not effectively cross-examine the victim's husband. That some of these assertions might have merit in a postconviction proceeding where such matters are properly cognizable, however, does not mean that we will consider them on direct review in the absence of any ruling of the trial justice adversely affecting the defendant's rights. *State v. Ambrosino, supra* at 105, 329 A.2d at 401. The defendant therefore must raise this claim by means of a petition for postconviction relief.⁶ *State v. Ambrosino, id.* at 105-06, 329

---

⁶General Laws 1956 (1969 Reenactment) §10-9.1-1 (a) (1), as enacted by P. L. 1974, ch. 220, §3, authorizes the filing of a petition for postconviction relief on the ground "that the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of this state."

A.2d at 401-02, to the extent that it differs, is hereby disapproved.[7]

## Denial of Motion for a Continuance

The complaining witness' testimony showed that one Edward McDermott was with her and defendant for several hours during the evening before and the morning after the crime was committed. McDermott was subpoenaed by defendant to appear as a witness; he attended the first day of the trial, but was not called to testify. He did not return on the second day of the trial; the explanation for his absence apparently was that he had gone to Las Vegas. The defendant claims that the trial justice's refusal to grant his request for a continuance of "a few days" until McDermott's return was an error of such magnitude that due process and the interests of fairness and justice dictate the granting of a new trial.

A motion for a continuance in a criminal case is addressed to the sound discretion of the trial justice, and his decision thereon will not be disturbed on appeal absent an abuse of discretion. *State* v. *Desroches, supra* at 506, 293 A.2d at 918; *State* v. *Monteiro,* 108 R.I. 569, 575, 277 A.2d 739, 742 (1971). Nevertheless, there may be occasions when a request for a continuance should be honored in order to protect the accused's constitutional right to procure the attendance of such witnesses and obtain such evidence as may be necessary to permit a full defense. *State* v. *Carillo,* 113 R.I. 32, 39-40, 317 A.2d 449, 454 (1974); *State* v. *Patriarca,* 112 R.I. 14, 37-38, 308 A.2d

---

[7]In *State* v. *Ambrosino,* 114 R. I. 99, 329 A.2d 398 (1974), the defendant based his claim of ineffective assistance of counsel on his attorney's failure to protest when the trial justice referred to the complaining witness as "Judge," his failure to object to a portion of the charge and his failure to request that the jury be polled after it had rendered its verdict. *Id.* at 105, 329 A.2d at 401-02. The court considered the claim on direct review.

300, 315 (1973); *State* v. *Rossi,* 71 R.I. 284, 289-90, 43 A.2d 323, 326 (1945).

We considered this question at some length in *State* v. *Patriarca, supra,* and we concluded that the denial of a continuance will not be deemed so arbitrary as to constitute a due process violation unless the defendant establishes the existence of all the following conditions:

> "\* \* \* first, that the testimony of the absent witness would be material; second, that [the defendant] had used diligence to procure the attendance of the witness or his deposition; third, that it is reasonably certain that the presence or testimony can be procured at the time to which the trial would be postponed; and, fourth, that such testimony be not merely cumulative." *Id.* at 38, 308 A.2d at 315.

Although there is authority for the *Patriarca* test,[8] neither the state nor the defendant in that case called to our attention *Ungar* v. *Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), wherein the Supreme Court said that "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process" and that we must instead search for the answer in the circumstances of the particular case. *Id.* at 589, 84 S.Ct. at 850, 11 L.Ed.2d at 931.

In this case, it matters not whether the federal or the *Patriarca* guidelines are controlling. In either event there was no abuse of discretion. Three considerations are dispositive of the issue. First, as already indicated, McDermott had discharged his obligation under the witness subpoena by being present in the courtroom on the day speci-

---

[8]*Jackson* v. *State,* 214 Md. 454, 459, 135 A.2d 638, 640 (1957), *cert. denied,* 356 U.S. 940, 78 S.Ct. 784, 2 L.Ed.2d 816 (1958); *State* v. *Wilcox,* 21 S. D. 532, 535-36, 114 N.W. 687, 688-89 (1908); *Lacks* v. *Commonwealth,* 182, Va. 318, 324, 28 S.E. 2d 713. 715 (1944).

fied in that subpoena,[9] and defendant did not resort to available measures to secure his attendance on subsequent days. Second, although defendant's motion requested a continuance of "a few days until Mr. McDermott returns from Las Vegas," he offered no assurance that McDermott would in fact be available within the "few days" requested. Finally, and most significantly, defendant in no way indicated the anticipated substance of McDermott's testimony, nor did he explain in what manner it would have been material to the case or helpful to his defense.[10] In the light of these circumstances, we cannot say that defendant was denied due process by the trial justice's denial of his motion for a continuance.

### Excessive Sentence

The defendant also contends that the 10-year sentence imposed upon him, though admittedly within statutory limits is disproportionate to his offense, and he seeks a revision. The proper procedural route for advancing that contention, however, is not to challenge the sentence by appealing from the judgment of conviction, but to seek

---

[9]General Laws 1956 (1969 Reenactment) §9-17-5 provides in pertinent part:

"Every witness who shall be duly served with a subpoena * * * and shall have his lawful fees tendered to him for his travel * * * and for one (1) day's attendance, shall be obliged to attend accordingly."

[10]The defendants' motion for a new trial contains the single conclusory allegation that "[t]he defendant's case rested immeasurably on this witness's testimony which defendant believes would have completely undermined the complaining witness's testimony." That statement, even if made in conjunction with the request for a continuance, would not have sufficed as the kind of statement of the substance of the expected testimony that is required if the trial justice is to be fully advised of the anticipated value of the evidence and if the court is to be placed in a position to decide whether the accused has been prejudiced by the denial of his request. See Manning 1. Redevelopment Agency, 103, R. I. 371, 378-79, 238 A. 2d 278, 382 (1968).

revision initially in the Superior Court pursuant to Super. R. Crim. P. 35, and then, if necessary, to come to this court by appeal. *State* v. *Crescenzo,* 114 R.I. 242, 265, 332 A.2d 421, 434 (1975); *State* v. *Fortes,* 114 R.I. 161, 176-77, 330 A.2d 404, 413 (1975).

### Remaining Assignments of Error

The defendant's remaining assignments of error are so utterly without basis in law that there is no reason to discuss them individually. Some are to discretionary rulings where patently no abuse of discretion has been shown; others are unsupported by either argument or citation of authority and hence under Sup. Ct. R. 16 do not warrant consideration; and, finally, if in any instance there is error, it clearly is harmless.

The defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the case is remitted to the Superior Court for further proceedings.

*Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, for plaintiff.

*William J. McGair, Lawrence F. O'Donnell,* Boston, Mass., for defendant.