STATE

v.

**Christopher MARSICH.**

No. 2007–306–C.A.

Supreme Court of Rhode Island.

Dec. 13, 2010.

Christopher R. Bush, Department of Attorney General, for State.

Leo Manfred II, Esq., Westerly, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

The defendant, Christopher Marsich (Marsich or defendant), is before the Supreme Court on appeal from a conviction of one count of first-degree robbery, for which he was sentenced to fifty years at the Adult Correctional Institutions, thirty years to serve; one count of using a firearm while committing a violent crime; and

one count of possession of a firearm after a previous conviction of a crime of violence. On the latter two counts the defendant was sentenced to ten years imprisonment for each count, to run concurrently with each other but consecutive to the robbery conviction. He also was adjudicated as a habitual offender, for which he received twenty-five years, twelve years to serve without parole, consecutive to the sentence for the underlying crime. We affirm.

### Facts and Travel

On December 1, 2005, after a long day of teaching school, Jacquelyn Cardillo (Mrs. Cardillo) returned to her home, on Sayles Hill Road in North Smithfield, Rhode Island, at approximately 7 p.m. As she began sorting her mail at her kitchen counter, she heard what she thought was her husband coming through the door to the garage. She was mistaken. When she turned her attention to the entranceway, she saw an armed intruder wearing a ski mask. The man confronted Mrs. Cardillo with his firearm, bound her wrists, and covered her eyes with duct tape while demanding to know where the safe was located. Although the Cardillos did not own a safe, Mrs. Cardillo told the man that her husband kept money in the fireplace in the basement. With the gun pressed to her back, the man led Mrs. Cardillo down to the basement, retrieved the money from the fireplace and left the Cardillos' home through the garage. Within minutes after the man fled the scene, Mrs. Cardillo's husband, Joseph Cardillo (Mr. Cardillo), arrived home and immediately called the police.[1]

At approximately 11 p.m. the night of the robbery, defendant was arrested at a motel approximately two miles from the Cardillos' home. The investigation revealed that defendant parked his pickup truck at the motel around 6 p.m. and was apprehended several hours later when he returned on foot, the motel owner having alerted the police about the unauthorized vehicle in the lot.

The defendant subsequently was indicted and convicted on all counts and found to be a habitual offender, based on two prior felony convictions. On appeal, defendant raises four issues for our review. First, he argues that the trial justice erred in denying his requested continuance on the day of trial. Next, he alleges ineffective assistance of trial counsel. The defendant's third appellate contention challenges the habitual-offender adjudication and lastly, defendant argues his conviction for the dual offenses of first-degree robbery and using a firearm in the commission of a violent crime violate the Double Jeopardy Clauses of the state and federal constitutions. We shall address those contentions that we deem are appropriately before the Court.

### Analysis

#### A. Denial of Motion for Continuance

■■■ The decision whether to grant a continuance to secure the attendance of a witness is committed to the sound discretion of the trial justice and will not be overturned on appeal unless there was an abuse of discretion. *State v. Firth,* 708 A.2d 526, 530 (R.I.1998). In certain instances, a request for a continuance should be granted "in order to protect the accused's constitutional right to procure the

---

1. During the attack, defendant mentioned something that led Mrs. Cardillo to believe there was a connection between defendant and her husband's business. She was correct: a year earlier, through a business he owned at the time, Mr. Cardillo sold a dump truck to defendant and, according to Mr. Cardillo, defendant made numerous complaints about the truck.

attendance of such witnesses and obtain such evidence as may be necessary to permit a full defense." *State v. Levitt*, 118 R.I. 32, 41, 371 A.2d 596, 601 (1977) (citing *State v. Carillo*, 113 R.I. 32, 39–40, 317 A.2d 449, 454 (1974); *State v. Patriarca*, 112 R.I. 14, 37–38, 308 A.2d 300, 315 (1973); *State v. Rossi*, 71 R.I. 284, 289–90, 43 A.2d 323, 326 (1945)). However, unless a defendant can satisfy certain criteria warranting a delay of trial, "the denial of a continuance will not be deemed so arbitrary as to constitute a due process violation * * *." *Levitt*, 118 R.I. at 42, 371 A.2d at 601. It is defendant's burden to establish that "the witness' testimony would be material; [and] second, the defendant used due diligence in attempting to procure the attendance of the witness * * *; third, it is reasonably certain that the witness would be available on the date to which the trial was continued; and finally, the testimony would not be merely cumulative." *Firth*, 708 A.2d at 530 (citing *State v. Allan*, 433 A.2d 222, 225 (R.I. 1981); and *Patriarca*, 112 R.I. at 38, 308 A.2d at 315).

In this case, the facts pertinent to whether defendant has met the requisite criteria set forth in *Firth* are as follows: On the day the trial was to commence, defendant sought a continuance because he was attempting to identify a potential alibi witness. In refusing to delay the trial, the trial justice noted that an alibi defense was raised months before the trial date and that defendant's efforts to identify the alibi witness had been neither recent nor fruitful.[2] The defendant argued that if the alibi witness—a former employee of a convenience store located near the Cardillos' neighborhood—were found, he would testify that on the night of the robbery defen-dant arrived at the convenience store on a bicycle "at some point, not very long after the alleged offense, [and] called a cab company from the 7–Eleven." Because this person no longer worked at 7–Eleven, defendant hoped to discover his identity and whereabouts through a subpoena of corporate employee records. The trial justice stated that "[t]his is something you could have done [and] should have done a long time ago." The trial justice also noted that he had continued the trial at least two times and that "there comes a point where the case has to get tried."

Based on the record before us, defendant has failed to meet the *Firth* criteria. First, this putative alibi witness had not yet been identified or interviewed; nor has there been a showing that this testimony was material. An alibi defense is "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." Black's Law Dictionary 84 (9th ed. 2009). The defendant stated that this witness would testify about events that happened "*not very long after* the alleged offense" at a location *near the scene of the crime*. (Emphasis added.) As such, this evidence would place defendant on a bicycle near the Cardillos' neighborhood around the time of the robbery, while his vehicle was parked two miles away, evidence that could be viewed as inculpatory rather than exculpatory.

As noted by the trial justice, defense counsel had raised a potential alibi defense at least one month before trial, thus affording defendant ample time to identify the witness and learn the parameters of his potential testimony. Lastly, there was no suggestion that this unnamed and un-

---

2. We note that it is not clear from the record whether defendant filed the requisite notice of intent pursuant to Rule 16(c) of the Superior Court Rules of Criminal Procedure, to rely on an alibi.

identified former 7–Eleven employee would have been available on the next trial date. Accordingly, because defendant failed to satisfy the requisite criteria for a continuance, we are of the opinion the trial justice did not err in denying defendant's motion for continuance.

## B. Ineffective Assistance of Counsel

Notwithstanding his motion to withdraw a claim of ineffective assistance of counsel on direct appeal, in an argument entitled "harmful error," defendant attempts to argue this issue. This Court has declared that allegations of ineffective assistance of counsel are "more properly cognizable in post-conviction proceedings." *State v. Gonsalves*, 476 A.2d 108, 112 (R.I.1984) (quoting *Levitt*, 118 R.I. at 39, 371 A.2d at 600). We are thus satisfied that this argument is not appropriate for appellate review in the absence of an evidentiary record. Although defendant argues that there were certain things the trial attorney could have done and should have done to prepare for trial, the majority of these claims seem speculative at best. Accordingly, we decline to address the issue on direct appeal.

## C. Habitual–Offender Adjudication

In passing on a trial justice's ruling on statutory interpretation, we do so on a *de novo* basis. *State v. Burke*, 811 A.2d 1158, 1167 (R.I.2002). " '[W]hen [the] statute expresses a clear and unambiguous meaning, the task of interpretation is at an end and this [C]ourt will apply the plain and ordinary meaning of the words set forth in the statute.' " *State v. Smith*, 766 A.2d 913, 924 (R.I.2001) (quoting *State v. Bryant*, 670 A.2d 776, 779 (R.I.1996)).

Based on the convictions in this case, defendant was adjudged a habitual offender and was sentenced to twenty-five years, twelve years of which to be served without parole. The defendant argues that he did not receive sufficient notice as required by G.L.1956 § 12–19–21, entitled "Habitual criminals"[3] and further, notwithstanding our decision about the sufficiency of the notice, this Court should adopt a rule in which felonies more than ten or fifteen years old may not be considered for purposes of habitual-offender adjudications.

The state suggests that this issue is not ripe for our review because defendant has not moved for a sentence reduction in accordance with Rule 35 of the Superior Court Rules of Criminal Procedure. This argument is misplaced. Rule 35(a) provides in pertinent part: "The court may correct an illegal sentence at any time. The court may correct a sentence imposed in an illegal manner and it may reduce any sentence when a motion is filed within one hundred and twenty (120) days after the sentence is imposed * * *." Although we have declared that "in the absence of 'extraordinary circumstances,' this Court will not consider the validity or the legality of a

---

3. General Laws 1956 § 12–19–21(a) states:

"If any person who has been previously convicted in this or any other state of two (2) or more felony offenses arising from separate and distinct incidents and sentenced on two (2) or more occasions to serve a term in prison is, after the convictions and sentences, convicted in this state of any offense punished by imprisonment for more than one year, that person shall be deemed a 'habitual criminal.' Upon conviction, the person deemed a habitual criminal shall be punished by imprisonment in the adult correctional institutions for a term not exceeding twenty-five (25) years, in addition to any sentence imposed for the offense of which he or she was last convicted. No conviction and sentence for which the person has subsequently received a pardon granted on the ground that he or she was innocent shall be considered a conviction and sentence for the purpose of determining whether the person is a habitual criminal."

sentence on direct appeal[,]" *State v. Morris,* 744 A.2d 850, 859 (R.I.2000) (quoting *State v. Bettencourt,* 723 A.2d 1101, 1114 (R.I.1999)), the issue before us does not concern a plea for leniency under Rule 35, nor has defendant alleged that the sentence was illegal or imposed in an illegal manner, challenges that are cognizable under Rule 35. Rather, defendant is seeking reversal of the trial court's holding that he is a habitual offender as a matter of law, based on the notice and the age of the triggering convictions, based on § 12–19–21.

 Because defendant failed to challenge the sufficiency of the notice at trial, this argument has been waived and will not be considered on appeal. *See State v. Moreno,* 996 A.2d 673, 684 (R.I. 2010) (discussing this Court's well settled "raise-or-waive" rule, which precludes us from considering issues at the appellate level that were not properly presented at the trial court). Notwithstanding the failure to preserve, we pause to note that the statute provides that the Attorney General "may file with the court a notice specifying that the defendant, upon conviction, is subject to the imposition of an additional sentence in accordance with this section * * *." Section 12–19–21(b). Here, the Attorney General's office filed a notice with the Superior Court and mailed a copy of the notice to defendant's attorney in February and again in March 2007, which stated: "[U]pon conviction of the instant offense, notice is hereby served that this defendant is subject to the imposition of an additional sentence as an habitual offender." It appears that defendant's record of criminal convictions was attached to these notices, with two felonies circled. Although we deem this notice to be sufficient to meet the requirements of the statute, when an accused faces the possibility of serving an additional twenty-five years in prison because of two previous felony convictions, care should be taken to provide that defendant with appropriate notice that specifically identifies the convictions that serve as the basis for habitual-offender classification. This was not done in this case, as evidenced by the shoddy, yet adequate, notice provided to defendant.

 Additionally, although defendant acknowledges that the habitual-offender statute is silent on the issue of the age of the triggering offense, he suggests that we adopt an interpretation in which felony convictions that date back a number of years—ten or fifteen—may not be considered for habitual-offender status. We reject this argument. When confronted with an unambiguous statute, it is our function to apply the plain and ordinary meaning of words that are set forth in the enactment. *See Smith,* 766 A.2d at 924 (citing *Bryant,* 670 A.2d at 779). In pertinent part, § 12–19–21(a) provides that "any person who has been previously convicted in this or any other state of two (2) or more felony offenses * * * shall be deemed a 'habitual criminal.'" This language is clear and leaves no room for a limiting construction; it must be applied in accordance with the plain and ordinary meaning of the words set forth in the enactment. Accordingly, we are of the opinion that the trial justice appropriately sentenced defendant as a habitual offender.

### D. Double Jeopardy

 A claimed violation of the Double Jeopardy Clause presents a "mixed question of law and fact of constitutional dimension[,]" and therefore our review of such a claim is *de novo. State v. Stone,* 924 A.2d 773, 778 (R.I.2007) (citing *State v. Snell,* 892 A.2d 108, 115 (R.I.2006)).

During pretrial motions, defendant's attorney moved to dismiss count 2 of the

442

indictment which alleged that defendant used a firearm while committing a crime of violence in violation of G.L.1956 § 11–47–3.2, based on his contention that this count amounted to a violation of the Double Jeopardy Clause.[4] The motion was denied and defendant assigns error to this ruling, arguing that his convictions of first-degree robbery (G.L.1956 § 11–39–1) and committing a crime of violence with a firearm violate the United States and Rhode Island Constitutions. U.S. Const. Amend. V; R.I. Const. art. 1, sec. 7.[5]

■ This Court long has held that "[b]ecause of the similar wording and purpose underlying the state and federal constitutional provisions on this subject, Rhode Island cases have hewed closely to federal double-jeopardy law when applying the analogous clause in the Rhode Island Constitution." *State v. Rodriguez*, 822 A.2d 894, 906 (R.I.2003) (citing *State v. Grullon*, 117 R.I. 682, 371 A.2d 265 (1977)). The Double Jeopardy Clause protects an accused from being "twice put in jeopardy," a term that has been construed as protecting a criminal defendant from multiple trials for the same offense, *Missouri v. Hunter*, 459 U.S. 359, 365, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); and prohibits a sentencing court from imposing greater punishment than the legislature has proscribed. *Id.* at 366, 103 S.Ct. 673.

■ The determination of whether a defendant is placed in double jeopardy can be made in one of two ways. The first method is the "same evidence" test set forth in *Blockburger v. United States*, 284

U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and adopted by this Court almost forty years ago. *See State v. Davis*, 120 R.I. 82, 86, 384 A.2d 1061, 1064 (1978) (acknowledging adoption of *Blockburger* test); *see also State v. Scanlon*, 982 A.2d 1268, 1277–78 (R.I.2009). Under this analysis, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Davis*, 120 R.I. at 86, 384 A.2d at 1064 (quoting *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180).

■ The second manner in which an alleged double jeopardy violation is analyzed is the test first established in *Hunter*, 459 U.S. at 365–66, 103 S.Ct. 673 and subsequently adopted by this Court. *See Rodriguez*, 822 A.2d at 907–08 n. 15. This analysis requires the Court to "examine the challenged statutes to ascertain whether the Legislature intended to authorize cumulative sentencing" for the offenses contained in the indictment. *Id.* at 907 n. 15. If the legislative intent underlying the enactment is clear, consecutive sentences upon conviction under both statutes does not offend principles of double jeopardy, "regardless of whether both statutes proscribe the same conduct under *Blockburger*." *Id.* at 907–08 n. 15 (citing *Hunter*, 459 U.S. at 367–68, 103 S.Ct. 673).

In accordance with *Hunter*, 459 U.S. at 367–68, 103 S.Ct. 673, we are of the opinion that the General Assembly has ex-

**4.** It is not clear whether defendant argued this motion under state or federal constitutional law; defendant's counsel made a very brief oral motion, stating that the count should be dismissed on double jeopardy grounds, "because the elements of both offenses are the same."

**5.** The Rhode Island Constitution provides in pertinent part that "[n]o person shall be subject for the same offense to be twice put in jeopardy." R.I. Const. art. 1, sec. 7. The United States Constitution provides that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *." U.S. Const. Amend. V.

pressed its clear directive that consecutive sentences be imposed for certain violent crimes committed by use of a firearm, and therefore it is unnecessary to undertake both analyses. At issue are defendant's convictions under §§ 11–39–1 robbery, and 11–47–3.2 use of firearm in a violent crime. Section 11–47–3.2(a) plainly states that "[*a*]*ny* sentence imposed upon a person pursuant to this section shall be imposed *consecutively to and not concurrently with any sentence imposed for the underlying crime * * *.*" (Emphases added.) As we noted in *Rodriguez,* "the General Assembly clearly has expressed its intent that a guilty defendant should receive consecutive sentences" for using a firearm during the commission of a crime of violence. *Rodriguez,* 822 A.2d at 908. In light of this unequivocal expression of legislative intent, we are of the opinion that cumulative punishment through consecutive sentences does not violate the Double Jeopardy Clause.

We contrast this case with our decision in *State v. Bolarinho,* 850 A.2d 907, 910 (R.I.2004), in which a defendant had been convicted of two separate crimes under the same statute, G.L.1956 § 11–5–2, assault with a dangerous weapon (the defendant's shod foot) and assault and battery resulting in serious bodily injury, based on the same evidence. In *Bolarinho,* 850 A.2d at 910–11, we held that the counts had merged for double jeopardy purposes under the *Blockburger* analysis. Because there was no indication that the General Assembly had authorized cumulative punishment for multiple violations of § 11–5–2, we deemed it unnecessary to undertake any analysis under *Hunter. Bolarinho,* 850 A.2d at 911. In the case before us, however, the clear legislative mandate that consecutive sentences be imposed for gun crimes causes us to reject the defendant's double-jeopardy argument.

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The record shall be remanded to the Superior Court.