**Supreme Court**

No. 2011-353-C.A.

(W2/08-179A)

|  |  |
|---|---|
| State | : |
| v. | : |
| Brian Verry. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                               :

v.                                    :

Brian Verry.                   :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Goldberg, for the Court.** The defendant, Brian Verry (defendant), is before the Supreme Court on appeal from a judgment of conviction entered after a jury trial in the Superior Court. He was convicted of one count of felony assault, for which he received a twenty-year suspended sentence with twenty years of probation; one count of simple assault, for which he received a one-year sentence to be served concurrently with the other sentence imposed; and one count of first-degree child abuse, for which he received a sentence of twenty years, with fifteen years to serve and five years suspended with five years of probation. In support of his appeal, the defendant argues that the trial justice (1) abused his discretion in refusing to grant a continuance, and (2) erred and violated the defendant's right to present a defense when the trial justice prohibited the defendant's father from testifying in the defendant's case-in-chief. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**Facts and Travel**

This case arose from the assault and abuse of Beth,[1] an infant less than two months of age. Beth was born on January 11, 2006, a premature birth; her parents are defendant and Megan Verry (Megan). On March 8, 2006, after discovering a "monstrous growth coming out of [Beth's] head[,]" defendant and Megan brought Beth to the Emergency Room (ER) at South County Hospital. At the ER, Beth was seen by a triage nurse and a physician, Dr. William Sabina (Dr. Sabina). Doctor Sabina examined Beth and interviewed defendant and Megan. After ordering a CT scan of Beth's head and examining her a second time, Dr. Sabina diagnosed Beth with a subdural hematoma with cephalohematoma; she was transferred, by ambulance, to the Emergency Department at Hasbro Children's Hospital (Hasbro). The Department of Children, Youth, and Families (DCYF) was notified that the infant may have been abused.[2]

At Hasbro, doctors performed a series of tests, which revealed that Beth suffered horrifying injuries, including a large skull fracture with both fresh and old bleeding in the brain. X-rays and an MRI also revealed small fractures near the ends of the infant's bones, where the bones grow; both collarbones had been fractured and were healing; the child's ribs were fractured in eighteen places; and her pelvis was cracked. In total, in her brief fifty-five days of life, the infant had sustained between thirty-six and forty bone fractures, including a skull fracture. Because of the number of fractures, Dr. Carol Jenny (Dr. Jenny), the director of the Child Protection Team at Hasbro, consulted a geneticist, Dr. Diane Abuelo (Dr. Abuelo), to recommend testing to determine whether Beth had an underlying bone disease, osteogenesis

---

[1] In order to protect her privacy, the infant has been given a pseudonym.

[2] Doctor Sabina testified that he contacted DCYF because nothing in Beth's history explained the causation of her brain swelling and because the CT indicated that some of the blood in Beth's brain could have been there days or weeks earlier.

imperfecta (OI or brittle bone disease). Hasbro subsequently sent a skin biopsy and blood sample to a laboratory in Seattle, Washington, for genetic testing.[3]

Doctor Jenny and Dr. Kathleen McCarten (Dr. McCarten), a pediatric radiologist who also examined the child and performed tests, testified that they did not attribute the child's injuries to an underlying bone disease. According to Dr. Jenny, because of the fact that Beth had not fractured any more bones since the March 8, 2006 incident, coupled with the fact that her bones had healed and developed "beautifully" since the initial trauma, it was Dr. Jenny's opinion that Beth did not have OI. Doctor Jenny concluded that Beth's injuries were caused by "excessive" squeezing, "abusive rough handling[,]" and "abusive head trauma."[4]

Because child abuse was suspected in this case, DCYF placed a forty-eight-hour hold on Beth, and she was removed from her parents' custody. The Narragansett Police Department began an investigation; Det. Timothy Lackie (Det. Lackie) went to defendant's home in order to interview the parents. The defendant was not home when Det. Lackie arrived, and Megan was interviewed first. The next day, on March 10, 2006, Det. Lackie interviewed defendant at the police station, with his attorney present. The defendant told the police that Beth's head may have hit the arm of a rocking chair while he was holding her on the night of March 8 and that he might have "held her too tight a couple of times."

A DCYF child protective investigator, Katherine Bianchi (Bianchi), also interviewed defendant. Bianchi testified that defendant had stated that "on several occasions, in an effort to make [Beth] stop crying, he squeezed her." The defendant also reported that he had previously

---

[3] Although the genetic testing found a "sequence variant[,]" the results failed to conclude that the infant had OI or any bone disease.

[4] Doctor Lauren Noel (Dr. Noel), Beth's pediatrician, testified that, at the time of trial, the infant had not broken a single bone since being discharged from Hasbro in April 2006.

"hit her * * * on the changing table in an effort to make her stop crying." The defendant further stated that, on the night Beth was hospitalized, "he had hit [Beth's] head on the changing table in an effort to have her stop crying and also her head on the side of the rocking chair in an effort * * * to make her stop crying."

The defendant was arrested and subsequently charged, by criminal information, with three felony crimes: two counts of felony assault, serious bodily injury due to Beth's skull fracture and serious bodily injury due to Beth's fractured ribs, in violation of G.L. 1956 § 11-5-2; and one count of first-degree child abuse, in violation of G.L. 1956 § 11-9-5.3. In April 2010, a jury trial commenced in Superior Court. On April 20, 2010, the trial justice granted a judgment motion of acquittal on count two, reducing the felony assault charge concerning the fractured ribs to the lesser-included offense of a simple assault. However, after the jury was unable to reach a verdict, a mistrial was declared.

A second jury trial commenced in January 2011. The defendant was convicted of all three counts. A judgment of conviction and commitment entered on February 18, 2011, and defendant timely filed a notice of appeal that same day.

## Analysis

### Denial of Motion for Continuance

The defendant claims that the trial justice erred by denying his motion for a continuance in order for the defense to investigate genetic-testing results that were provided to the defense during jury selection in the second trial. Apparently, several months before trial, in June 2010, defense counsel asked that the state perform supplemental testing mentioned by the genetic

laboratory in Seattle, Washington, in its 2006 report.[5]  The record is silent as to when defendant's blood was drawn or sent to the laboratory.  However, the laboratory received the state's supplemental testing request in December 2010.  On January 5, 2011, day two of jury selection in defendant's second trial, the state provided defense counsel with a report discussing results from the requested supplemental testing conducted in the Seattle, Washington laboratory. After receiving the report, defense counsel asked the trial justice for a continuance of at least one week, based on his contention that more time and information were needed in order to retain an expert to testify about the report and explain a sentence in the report that stated, "[g]iven these findings[,] in addition to the report of no signs of OI in your patient, the father, [defendant], we believe it is unlikely that this variant contributes to bone fragility."  Apparently, defense counsel had learned—recently—that when defendant was four months old, he broke his femur and that defendant's family may have information of "other incidents of broken bones within the family[.]"  Defense counsel requested a continuance to determine whether this new information, in conjunction with the recently received laboratory report, could explain Beth's injuries.  After hearing the parties' arguments, the trial justice denied defendant's request for a continuance.

The decision whether to grant a continuance is solely within the trial justice's discretion and will not be disturbed absent an abuse of discretion.  State v. Marsich, 10 A.3d 435, 438 (R.I. 2010).  "In certain instances, a request for a continuance should be granted 'in order to protect the accused's constitutional right to procure the attendance of such witnesses and obtain such

_____

[5] The results of the initial testing which Dr. Abuelo ordered in March 2006 came back in July 2006 and noted a variant in the child's blood:

> "If the sequence change is also present in DNA from unaffected relatives of your patient, [Beth,] it would provide additional evidence that it is a biologic variant rather than a disease causing mutation.  If you wish to study [Beth's] parents[,] please provide a DNA sample from each or 2-3 cc of blood drawn * * * and the family history and medical history for each parent."

evidence as may be necessary to permit a full defense.'" Id. at 438-39 (quoting State v. Levitt, 118 R.I. 32, 41, 371 A.2d 596, 601 (1977)). However, "[a] defendant is not entitled to a continuance * * * as a matter of course." State v. Barbosa, 908 A.2d 1000, 1005 (R.I. 2006) (quoting State v. Barnes, 122 R.I. 451, 455, 409 A.2d 988, 990 (1979)).

"No mechanical test exists for deciding when a denial of a request for a continuance is so arbitrary as to violate due process." Barbosa, 908 A.2d at 1005. "However, unless a defendant can satisfy certain criteria warranting a delay of trial, 'the denial of a continuance will not be deemed so arbitrary as to constitute a due process violation * * *.'" Marsich, 10 A.3d at 439 (quoting Levitt, 118 R.I. at 42, 371 A.2d at 601). The defendant bears the burden of establishing that: (1) "the [evidence] would be material"; (2) "[the] defendant used due diligence in attempting to procure" the evidence; (3) "it is reasonably certain that the [evidence] would be available on the date to which the trial was continued"; and (4) "the testimony would not be merely cumulative." Id. (quoting State v. Firth, 708 A.2d 526, 530 (R.I. 1998)).

Based on the record before us, defendant has failed to meet the continuance criteria, and, therefore, we are of the opinion that the trial justice did not abuse his discretion in denying defendant's motion for a continuance. In denying defendant's motion for a continuance, the trial justice focused on factors two and three of the continuance criteria.

First, the trial justice noted that defense counsel "had an opportunity to investigate the scientific reliability of the type of test going to be conducted by [the Seattle, Washington] lab and no one ha[d] done that investigation[.]" The trial justice noted that he did not believe defense counsel had "attempt[ed] over the last year and a half, over the last year, to develop any evidence that the testing done by the State of Washington * * * laboratory is sufficiently scientifically accepted[.]" Next, the trial justice determined that defense counsel was seeking a

continuance to obtain evidence that was speculative and that defense counsel was "speculating that if the experts * * * were provided with more information, their best guess might be more conditional or may even be different[.]" The trial justice went on to find that "[t]here [wa]s absolutely no * * * suggestion that [the evidence being discussed] [wa]s anything other than a cutting edge, exploratory scientific inquiry," "which [he was] not sure [had] been peer review[ed]" and that he did not know how, under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), "any of this information could possibly get before the jury if * * * defendant himself [was] describing this genetic test as a best guess."

"The denial of a motion for a continuance constitutes an abuse of discretion only if the movant is able to satisfy all four of the criteria enumerated [above]." Barbosa, 908 A.2d at 1006. As defendant has failed to do so, we are of the opinion that the trial justice did not err in denying defendant's motion for a continuance.

**Testimony of Defendant's Father**

The defendant also contends that the trial justice committed prejudicial error in declining to allow his father to testify as a defense witness. During defendant's second jury trial, defendant sought to have his father testify that, when defendant was four months old, he broke his leg when his father lifted him up and out of his crib. After determining that defendant's father's testimony was "irrelevant, confusing, and [could] lead to [an] argument about brittle bone" disease which "both [parties agreed] * * * they w[ould] not argue[,]" the trial justice precluded the father's testimony. We discern no error.

"The Sixth Amendment to the United States Constitution allows criminal defendants to offer testimony of witnesses on their behalf." State v. Malone, 568 A.2d 1378, 1382 (R.I. 1990). This Court has held, however, "that there is no constitutional right to introduce irrelevant,

immaterial, or prejudicial evidence * * *." Id. Accordingly, "[a] trial justice's decision to admit or to exclude evidence on relevancy grounds is a discretionary decision that will not be disturbed on appeal, as long as the trial justice adequately explained his or her reasoning and the decision did not amount to an abuse of discretion." Lett v. Giuliano, 35 A.3d 870, 878 (R.I. 2012). However, a trial justice's decision to exclude evidence on relevance grounds "must be used sparingly. * * * It is only when evidence is marginally relevant and enormously prejudicial that a trial justice must exclude it." State v. Covington, 69 A.3d 855, 863 (R.I. 2013) (quoting State v. Smith, 39 A.3d 669, 675 (R.I. 2012)).

After careful review of the record, we are satisfied that the trial justice did not err in precluding this testimony. We agree with the trial justice's determination that the defendant's father's testimony "would be irrelevant, confusing, and lead to argument about brittle bone wherein both sides ha[d] told [him] on the record that they w[ould] not argue." Therefore, we are satisfied that the trial justice did not abuse his discretion in excluding this testimony.

**Conclusion**

For these reasons, we deny the defendant's appeal and affirm the judgment of conviction. The record may be remanded to the Superior Court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    State v. Brian Verry.

**CASE NO:**    No. 2011-353-C.A.
    (W2/08-179A)

**COURT:**    Supreme Court

**DATE OPINION FILED:**  November 20, 2014

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Washington County Superior Court

**JUDGE FROM LOWER COURT**:

    Associate Justice Edwin J. Gale

**ATTORNEYS ON APPEAL:**

    For State:  Christopher R. Bush
           Department of Attorney General

    For Defendant:  Lara E. Montecalvo
           Office of the Public Defender